**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **REGIONAL PRODUCE COOPERATIVE CORPORATION,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 19-1883** |
| | : | |
| **TD BANK, N.A.** | : | |
| | : | |
| **Defendant.** | : | |

---

**Goldberg, J.**                                                    **March 24, 2020**

## <u>MEMORANDUM</u>

Plaintiff Regional Produce Cooperative Corporation ("Plaintiff" or "RPCC") alleges that Defendant T.D. Bank, N.A. ("Defendant" or "TD Bank") permitted and facilitated an embezzlement scheme by Plaintiff's former President and CEO. Plaintiff sued TD Bank in state court alleging claims of common law negligence, negligence under the Pennsylvania Commercial Code, conversion under the Pennsylvania Commercial Code, and common law aiding and abetting conversion. Defendant removed this case to federal court, under 28 U.S.C. § 1332, and now seeks dismissal of the entire Complaint. For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I.      FACTS IN THE COMPLAINT

The following facts are taken from Plaintiff's Complaint:[1]

---

[1]      In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Plaintiff/RPCC is a Pennsylvania non-profit cooperative corporation, doing business as the Philadelphia Wholesale Produce Market (the "Market"). The Market first opened in 2011 and is the world's largest fully-refrigerated wholesale produce terminal which supplies fresh produce to the Philadelphia region and beyond. (Compl. ¶¶ 10–11.)

For decades prior to the Market's opening, another produce entity, the Philadelphia Fresh Food Terminal Corporation ("PFFTC") operated what was called the Philadelphia Regional Produce Market. This entity operated at the same location where the Market presently operates. (Id. ¶¶ 12, 18.)

Sometime in 2008, merchants using the Philadelphia Regional Produce Market required more up-to-date facilities. By 2011, PFFTC's business was transitioned to Plaintiff/RPCC. This transition did not change the nature of the produce business. (Id. ¶¶ 19–20.)

On July 30, 2009, Caesar "Sonny" DiCrecchio—PFFTC's Market Manager and Plaintiff's President and CEO—met with the Branch Manager at TD Bank's Whitman Branch, located in Philadelphia, Pennsylvania. That same day, a new Business Checking account (the "TD Account") was opened under PFFTC's name at the Whitman Branch. DiCrecchio signed the TD Account's Business Signature Card as the sole authorized signer. According to the Complaint, TD Bank failed to require evidence that PFFTC's Board of Directors ("PFFTC Board") approved the account with DiCrecchio as the sole account signatory. Plaintiff asserts that the PFFTC Board, in fact, never approved the account or a single signature process. (Id. ¶¶ 15, 21–25.)

In connection with the opening of the TD Account, Defendant also provided DiCrecchio with a "For Profit Corporate Banking Resolution" (the "Banking Resolution"), which appears to be a standard form generated by TD Bank. The Banking Resolution required PFFTC's Secretary to sign the account documentation and certify that the PFFTC's Board had met and voted on a

resolution authorizing: (1) the account opening for the corporation; and (2) the number of signatures required in order to withdraw funds and remit payments from the account. PFFTC's Secretary, however, never signed the Banking Resolution. Rather, it was signed only by DiCrecchio on July 31, 2009, in his capacity as Executive Director. Although the Banking Resolution provided a line for PFFTC's Secretary to certify the date on which the PFFTC Board met in order to approve the resolution, this line was left blank. Finally, the Banking Resolution also required PFFTC's Secretary to list the number of signatures required to withdraw funds and remit payments from the TD Bank, and provided four separate lines for the signatures of corporate officers authorized to withdraw funds from the TD Account. DiCrecchio unilaterally listed only himself as the authorized corporate agent and signed his name and title underneath. Defendant accepted this Banking Resolution from DiCrecchio even though it was incomplete and omitted key information. (Id. ¶¶ 26–36.)

According to Plaintiff, Defendant also failed to ensure the correct identity of the entity using the TD Account. While the TD Account was originally opened in the name of PFFTC, DiCrecchio eventually began to use it for Plaintiff's business in operating the Market. Sometime after the Market opened in 2011, checks made payable to Plaintiff were deposited into the TD Account. Moreover, DiCrecchio wrote checks from the TD Account for use in conducting Plaintiff's business. Defendant never required either updated documentation regarding the proper account holder or a resolution from the PFFTC Board or from Plaintiff's Board of Directors authorizing the apparent change in the use of the TD Account. Plaintiff claims that, by not taking the basic steps required by federal regulations and its own policies, Defendant effectively allowed DiCrecchio to bypass the requirement of seeking approval from Plaintiff's Board to either (a) open

a bank account for Plaintiff or (b) use PFFTC's account for Plaintiff's business. (Id. ¶¶ 40–42, 45, 47, 50.)

Plaintiff's Complaint goes on to allege that, as the sole necessary signatory on the TD Account, DiCrecchio eventually began to use the TD Account to intercept funds intended for Plaintiff and withdraw them for his own personal use. He wrote and signed fraudulent checks payable to fictitious businesses by (a) altering otherwise legitimate checks payable to entities conducting business with Plaintiff, (b) forging endorsements on checks payable to Plaintiff, (c) remitting funds to third-parties to pay for his living expenses and other personal ventures, (d) writing large checks to organizations not authorized by Plaintiff's Board, (e) loaning money to Plaintiff's employees for personal endeavors, and (f) writing improper checks payable to himself. Ultimately, DiCrecchio caused direct financial losses for Plaintiff in the amount of at least $8 million. (Id. ¶¶ 51–56.)

On August 1, 2018, an emergency special meeting of Plaintiff's Board was called to discuss the recent discovery of DiCrecchio's fraudulent activity and embezzlement. Plaintiff's Board learned, at this time, that DiCrecchio had opened the TD Account as a "single-signer account," despite Plaintiff's Board's expectation and understanding that the operating account for Plaintiff was supposed to have been a "two-signer account." DiCrecchio had obtained a second signature from a member of the PFFTC Board and Plaintiff's Board for legitimate business expenses of both PFFTC and Plaintiff, thereby tricking Plaintiff's and the PFFTC Boards into believing that the operating account for the Plaintiff was, in fact, a "two-signer account." (Id. ¶¶ 57–59.)

Plaintiff filed suit in state court against TD Bank on April 11, 2019, alleging (1) common law negligence, (2) negligence under 13 Pa.C.S. §§ 3405 and 3406, (3) conversion of instruments

under 13 Pa.C.S. § 3420, and (4) aiding and abetting conversion.  Defendant removed the case to federal court and subsequently moved to dismiss the Complaint.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "'a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 556 U.S. at 679).

## III.  DISCUSSION

Defendant moves to dismiss all of Plaintiff's claims on four alleged grounds:  (1) the Pennsylvania Uniform Commercial Code bars Plaintiff's common law claims concerning the unauthorized transactions; (2) all of Plaintiff's claims are barred by the applicable statutes of limitations; (3) Plaintiff fails to state a plausible claim for negligence because there is no private right of action under the Bank Secrecy Act; and (4) Plaintiff fails to state a plausible claim for conversion.

In making these arguments, Defendant relies, in part, on the Business Deposit Account Agreement ("BDAA"), which it attaches as an exhibit to its Motion to Dismiss.  Consequently, I will first analyze whether the BDAA may be considered at the Rule 12(b) stage of this litigation.

### A.  **Whether the Business Deposit Account Agreement May Be Considered**

Referencing the BDAA, Defendant contends that once DiCrecchio signed PFFTC's Business Signature Card and For Profit Corporate Banking Resolution, listing himself as the "Ex. Director" and sole authorized signer of the Account, Plaintiff became bound by the BDAA. Defendant posits that because the BDAA "governs the relationship" between the parties and "states the parties rights and obligations concerning the transactions at issue," it is integral to the Complaint and, therefore, may be considered without converting the Motion to Dismiss into one for summary judgment.  (Def.'s Mem. Supp. Mot. to Dismiss, 2 n.3 (citing In re Egalet Corp. Sec. Litig., 240 F. Supp. 3d 479, 497 (E.D. Pa. 2018).)

As a general rule, a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "may not consider matters extraneous to the pleadings" without converting the motion

into one for summary judgment.  <u>In re Burlington Coat Factory Secs. Litg.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).  The rule, however, has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint.  <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014).

Defendant contends that the BDAA falls within the third exception.  The United States Court of Appeals for the Third Circuit has noted that even where a complaint does "not explicitly refer to or cite" the challenged exhibit, the critical inquiry is "not merely whether the extrinsic document was explicitly cited," but rather "whether the claims in the complaint are 'based' on [the] extrinsic document."  <u>In re Burlington</u>, 114 F.3d at 1426 (internal citation omitted).  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'"  <u>Id.</u>

Applying that standard here, I find that several factors presently preclude my consideration of the BDAA.  First, it is not clear from the face of the Complaint that Plaintiff's claims rely upon the BDAA, or even that Plaintiff is bound by the BDAA.  Indeed, the Complaint cites to both the Banking Resolution and the Business Signature Card, but makes no reference to the BDAA.  There is no indication that Plaintiff, through DiCrecchio or otherwise, ever received the BDAA, that Defendant communicated the terms of the BDAA to Plaintiff, or that the BDAA controls this particular dispute.  In fact, according to the Complaint, the TD Account was originally opened in the name of Plaintiff's predecessor—PFFTC—and was never updated to identify the account holder as Plaintiff.  Consequently, Plaintiff may not actually be an account holder bound by the BDAA.  (Compl. ¶¶ 40–45.)  While Defendant urges that the parties' banking relationship had to

have been governed by the BDAA, such a finding requires that I accept facts beyond those alleged or otherwise relied upon in the Complaint.

Second, as Plaintiff notes, the BDAA appears to conflict in terms with two documents that are explicitly cited in the Complaint—Defendant's Business Signature Card and Banking Resolution. (Compl. ¶¶ 23, 26–27, 30–35.) According to the Complaint, both of these documents suggest that Defendant offered multiple-signer accounts. (Pl.'s Opp'n Mot. to Dismiss, Ex. A.) The Banking Resolution has a blank space on which to list the minimum number of signatures required to withdraw funds and remit payments, while the Business Signature Card allows for up to four authorized signatures for the Account and has a section specifying the "Number of Signatures Required."[2] (Id.; Compl. ¶¶ 31, 35.) By contrast, the BDAA, on which the Bank relies, expressly states that "[w]e do not offer accounts on which two or[] more signatures are required for a check or other withdrawal . . . you agree that if any Account purports to require two or more signers on items drawn on the Account, such provision is solely for your internal control purposes and is not binding on us." (Def.'s Mot. to Dismiss, Ex. A.) Sorting out which of these documents controls is a factual dispute not appropriate for resolution on a Rule 12(b)(6) Motion.[3]

---

[2] Defendant argues that both the Business Signature Card and the Banking Resolution for Plaintiff had a "1" written next to their respective "Number of Signatures Required" sections. It contends that the Bank did not allow its employees to mark any number other than "1" in those blanks. While this may be true, such a representation requires consideration of evidence extraneous to the Complaint.

[3] Defendant contends that the Signature Card expressly states that "[t]he Authorized Individual(s) signing agree(s) . . . to the terms set forth in the Deposit Account Rules and Disclosure" and that the Authorized Individual signing the document "acknowledge[s] that [the Bank] provided at least one copy of these deposit account documents." (Def.'s Mot. to Dismiss, Ex. A.) Nothing in the Complaint or the documents properly before me indicates that the "Deposit Account Rules and Disclosure" is the same as the "Business Deposit Account Agreement" (or BDAA) on which Defendant currently relies.

In short, the BDAA is neither mentioned nor relied upon in the Complaint. Moreover, Plaintiff disputes that it received or was bound by this document. Accordingly, I do not find that this document was integral to the Complaint, such that it may be considered at the motion to dismiss stage.

### B.       Whether the Pennsylvania UCC Displaces the Common Law Claims

Defendant's first argument in support of dismissal alleges that the Pennsylvania Commercial Code displaces Plaintiff's common law claims for negligence and aiding and abetting conversion.

The Pennsylvania Commercial Code ("the Code") is Pennsylvania's version of the Uniform Commercial Code. Article 3 of the Code regulates negotiable instruments, including checks and the check collection process. See 13 Pa. Cons. Stat. § 3102. Article 4 defines the rights between parties with respect to bank deposits and collections involving banks located in Pennsylvania. See 13 Pa. Const. Stat. § 4102(b).

When and whether common law claims are displaced by the Code is covered in section 1103, which states:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa. Cons. Stat. § 1103(b). Comment two to that provision notes that "while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect." Id. at cmt. 2 (emphasis in original). Thus, the Code displaces parallel common law claims where: (1) "[the Code] supplies a comprehensive remedy"; and (2) where "reliance on the common law would

thwart the purposes of the Code." O'Neill, Bragg & Staffin, P.C. v. Bank of Am. Corp., No. 18-2109, 2018 WL 5921004, at *7 n.4 (E.D. Pa. Nov. 13, 2018) (quoting Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A., 741 F. Supp. 2d 705, 712–13 (E.D. Pa. 2010) (citing N.J. Bank, N.A. v. Bradford Sec. Operations, Inc., 690 F.2d 339, 345 (3d Cir. 1982))).

Here, Plaintiff maintains common law claims for negligence and aiding and abetting conversion.[4]  I individually address whether each one is displaced by the Code.

### 1.   Negligence

The Code establishes "an elaborate and comprehensive negligence regime." Envtl. Equip., 741 F. Supp. 2d at 713.   Section 4401 "creates a general cause of action in negligence, allowing aggrieved customers to assert claims against banks when banks charge items that are not properly payable against customer accounts." Id. (citing 13 Pa. Cons. Stat. § 4401).   "Section 4406 makes this regime even more intricate in cases of altered checks or forged drawer signatures when banks choose to provide their customers with account statements." Id.   Specifically, § 4406 provides:

> **(c) Duty of customer.—**If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

13 Pa. Cons. Stat. § 4406(c).   Thus, the Code creates a cause of action sounding in negligence against a bank for improperly crediting items against an account, but allows the bank to shift the

---

[4]      Defendant also suggests that Plaintiff has a common law claim for conversion that is displaced by the Code.  (See Def.'s Mem. Supp. Mot. Dismiss 8.)  A review of the Complaint, however, does not reveal any such claim.

loss onto the customer by proving that the customer failed to exercise ordinary care, promptly notify the bank, or exercise proper control over its employees.  Envtl. Equip., 741 F. Supp. 2d at 713–14.  The customer may, in turn, demonstrate how the bank's negligence contributed to its loss.  Id.

Nonetheless, not all common law negligence claims are foreclosed by the Code.  "[I]t is well established in the Third Circuit . . . that under some fact patterns, a plaintiff may maintain a common law claim for negligence parallel to a claim under the [Code]."  Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 781 n.7 (E.D. Pa. 2008) (allowing a parallel common law negligence claim in an action involving forged stock certificates) (citing New Jersey Bank, N.A. v. Bradford Secs. Operations, Inc., 690 F.2d 339, 346–47 (3d Cir. 1982); Universal Premium v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995)).  "Thus the displacement analysis with respect to negligence is fact-specific," and it is often not clear at the motion to dismiss stage whether a claim of negligence should be displaced by the Code.  Bucci, 591 F. Supp. 2d at 781 n.7.

In Bucci v. Wachovia, N.A., an analogous case considering displacement of common law claims, the plaintiff's employee allegedly stole money from the plaintiff—over the course of eight years—by altering checks and the company's financial records to conceal the fraud.  Id. at 778.  All of these checks were cashed or deposited at the defendant bank.  Id.  When the scheme was discovered, the plaintiff sued the defendant bank alleging that by permitting the employee to improperly cash hundreds of checks containing obvious alterations, the bank was either fraudulently or negligently complicit in the scheme.  Id.  The bank moved, in part, to dismiss the negligence claim as displaced by the Code.  Id. at 781.  The court declined to do so noting that the plaintiff's allegations described "a fraudulent scheme that involved altered checks, checks improperly made out to 'Cash,' checks deposited into business and personal accounts, all of which

took place at the same branch of the same bank over a period spanning nearly a decade." <u>Id.</u> It concluded that "[a]t this stage of the litigation it is not apparent whether the totality of the allegations, which I must construe in favor of the plaintiff, are fully redressable by section 4406, or any other section of the Code." <u>Id.</u>

The same holds true here. The scheme described in the Complaint does not simply involve altered checks. Rather, it alleges a more in-depth plan wherein DiCrecchio fraudulently opened a one-signer account and was then permitted to write checks against that account and use the money for an entirely different entity or for his own purposes. It is not entirely clear, based purely on the allegations of the Complaint, that the negligence claim is fully displaced by the Code. While Defendant may revisit this argument at a later time, it is not appropriate on a motion to dismiss.

2.    <u>Aiding and Abetting Conversion</u>

Defendant also asserts that Plaintiff's common law claim for aiding and abetting conversion must be dismissed because (a) it is not a cognizable claim and (b) in any event, it is displaced by the Code. On this issue, I agree with Defendant and will dismiss this claim.

As a primary matter, I find that aiding and abetting conversion is not a cognizable cause of action in Pennsylvania. Plaintiff has cited no authority demonstrating the existence of any Pennsylvania common law claim for aiding and abetting conversion, and my own search of Pennsylvania cases has identified no such cause of action. As one federal court has noted, "'aiding and abetting' a conversion does not appear to be a tort in Pennsylvania . . . because I am unconvinced that this is, in fact, a cause of action, and because there has been no legal argument advancing the issue, I find that there is no 'aiding and abetting conversion' tort in Pennsylvania; I

have no basis upon which to create torts in this state." [5] <u>Mifflinburg Telegraph, Inc. v. Criswell</u>, 277 F. Supp. 3d 750, 795 (M.D. Pa. 2017).

Even assuming a cause of action exists for aiding and abetting conversion and is co-extensive with a claim for conversion, I nonetheless find such a claim to be displaced by the Code. Under Pennsylvania law, common law conversion requires the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." <u>Universal Premium Acceptance Corp. v. York Bank & Trust Co.</u>, 69 F.3d 695, 704 (3d Cir. 1995) (quotations omitted). Plaintiff claims that Defendant aided and abetted DiCrecchio's conversion of Plaintiff's funds by (1) not requiring DiCrecchio to present evidence of authorization from Plaintiff's Board regarding his continued deposit and withdrawal of Plaintiff's funds in the TD Account; and (2) failing to notify Plaintiff's Board regarding DiCrecchio's deposit of Plaintiff's funds to the TD Account where Plaintiff was not a named account holder. (Compl. ¶ 89.)

---

[5]  Plaintiff cites two cases in support of its contention that aiding and abetting conversion is a recognized claim in Pennsylvania. These cases are inapposite.

In <u>Marion v. TDI, Inc.</u>, No. 02-7032, 2004 WL 1175740 (E.D. Pa. May 27, 2004), the complaint raised twenty different causes of action, one of which was aiding and abetting conversion. <u>Id.</u> at *1. Without individually discussing any of the claims, the court stated that "[s]ince I am required, at this stage, to accept as true all factual averments of the amended complaint, and since dismissal is improper unless it is clear that plaintiff cannot possibly prove the claim asserted; and since the amended complaint has obviously been prepared with great care and skill, I am satisfied that, except for the issues discussed below [forum selection clause, standing, and *in pari delicto*], the motions to dismiss lack arguable merit." <u>Id.</u> at *2. The court never discussed the legal viability of the aiding and abetting breach of fiduciary duty claim.

Similarly, in <u>Zen Investments, LLC v. Unbreakable Lock Co.</u>, 276 F. App'x 200 (3d Cir. 2008), the plaintiff brought a series of claims for breach of fiduciary duty, conversion, and aiding and abetting conversion. <u>Id.</u> The district court *sua sponte* dismissed them all as moot. <u>Id.</u> at 201. The Third Circuit reversed the mootness finding without substantively addressing any of the claims. <u>Id.</u> at 202.

The Code squarely creates a remedy for this type of conversion claim. Section 3420 of the Pennsylvania Commercial Code provides that:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or endorser who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.

13 Pa. Cons. Stat. § 3420(a). "Thus, an action based on the deprivation of property, where that property is an instrument, is subsumed and displaced by section 3420." Bucci, 591 F. Supp. 2d at 780; see also Citizens Bank of Pa. v. Chevy Chase Bank, No. 03-5208, 2004 WL 875499 (E.D. Pa. Sept. 15, 2003) (finding that the plaintiff's common law claim for conversion was barred by the UCC); Gress v. PNC Bank, 100 F. Supp. 2d 289, 292 (E.D. Pa. 2000) (predicting that Pennsylvania courts would hold that common law claims for conversion, "insofar as they relate to conversion of a negotiable instrument," would be displaced by section 3420).

As aiding and abetting conversion is not a plausible cause of action and, in any event, would be displaced by the Code, I will grant Defendant's Motion to Dismiss this claim.

C.    **Statute of Limitations**

Defendant next seeks dismissal of Plaintiff's common law negligence and statutory negligence and conversion claims based on the applicable statute of limitations.

1.    Common Law Negligence Claim

It is well-established that federal courts apply state law to determine when an action accrues for the purposes of the statute of limitations in matters arising under state law. Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533 (1949); Creghan v. Procura Mgmt., Inc., 91 F. Supp.

3d 631, 648 (E.D. Pa. 2015). Under Pennsylvania law, the statute of limitations for claims of negligence is two years. See 42 Pa. Cons. Stat. § 5524. "In Pennsylvania, a cause of action accrues on the date the injury was sustained, or when 'a party has a legal right to institute suit and can maintain a successful action.'" DiCicco v. Willow Grove Bank, 308 F. Supp. 2d 528, 534 (E.D. Pa. 2004) (quotation omitted).

Plaintiff's common law negligence claim is premised on two main theories, both of which Defendant asserts were untimely plead in Plaintiff's April 11, 2019 Complaint. As to Plaintiff's negligence claim based on DiCrecchio's allegedly improper July 30, 2009 opening of the Account in Plaintiff's name, Defendant asserts that the claim accrued on that date, thus requiring that Plaintiff file its Complaint by July 30, 2011. As to Plaintiff's claim for negligence based on DiCrecchio's alleged unauthorized withdrawals and check writing, Defendant urges that any event that occurred before April 11, 2017—two years prior to the filing of the Complaint—is barred.[6]

To avoid the statute of limitations bar, Plaintiff invokes the discovery rule. "The discovery rule is a judicially created exception to the general rule that a cause of action accrues when the wrongful conduct is committed. It tolls the running of the statute of limitations until the party asserting the claim either knows or reasonably should know: 1) that he or she has suffered an injury; and 2) that the injury sustained was caused by the conduct of another party." Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 12 F. Supp. 2d 391, 414–15 (M.D. Pa. 1998). "[T]he discovery rule focuses not on the plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." Mest v. Cabot Corp.,

---

[6]     Defendant also contends that Plaintiff's claims arising from DiCrecchio's fraudulent withdrawals and check writing are barred by the BDAA's clear and unambiguous terms, which required Plaintiff to notify Defendant within sixty calendar days of receipt of Account statements, and that failure to so notify Defendant barred any further action related to the disputed transaction. As set forth above, however, I decline to consider the BDAA at this time.

449 F.3d 502, 511 (3d Cir. 2006) (internal quotation marks omitted); see also Perelman v. Perelman, 545 F. App'x 142, 149 (3d Cir. 2013).  The party attempting to apply the discovery rule "bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury."  Id. at 150 (internal quotations omitted).  "To demonstrate reasonable diligence, a plaintiff must establish[] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others."  Mest, 449 F.3d at 511 (quotations omitted).  Lack of knowledge, a mistake, or a misunderstanding will not toll the statute.  See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).

Where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause," a court may determine that the discovery rule does not apply as a matter of law.  Brawner v. Educ. Mgmt. Corp., 513 F. App'x 148, 150 (3d Cir. 2013) (quoting Fine v. Checcio, 870 A.2d 850, 858–59 (Pa. 2005)).  As a general rule, however, "the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors."  Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (internal quotations and citations omitted).  "Thus, once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law."  Id. (emphasis in original); see also Adams v. Zimmer US, Inc., 943 F.3d 159, 164 (3d Cir. 2019) (holding that factual issues pertaining to a plaintiff's notice and diligence are for a jury to decide).

Here, the application of the discovery rule requires a fact-specific inquiry.  Plaintiff contends that DiCrecchio acted as a "rogue employee," who, with Defendant's permission, opened

the TD Account as a single-signer account, contrary to Defendant's policies and procedures and unbeknownst to Plaintiff. Because of the dual-signer checks that Defendant provided, Plaintiff claims it was tricked into believing that Defendant would only honor checks drawn with two signatures. Plaintiff emphasizes that although it knew of the TD Account's existence, it was unaware that the account permitted DiCrecchio to make withdrawals from the TD Account on his signature alone and without proper authorization. Plaintiff concludes that this scheme prevented discovery of the fraudulent transactions until after DiCrecchio confessed his actions in August 2018.

Defendant responds that DiCrecchio—in his capacity as President and CEO of Plaintiff—was Plaintiff's agent. As such, Defendant presses that, under well-established Pennsylvania law, DiCrecchio's knowledge and conduct is imputed to his employer, *i.e.* Plaintiff. Because Plaintiff vested DiCrecchio with actual and apparent authority to open the TD Account and make transactions on the TD Account, Plaintiff is bound by DiCrecchio's actions and knowledge even if he exceeded his authority.

Defendant's argument, however, disregards the well-established rule that the principal in a principal/agent relationship is only "liable for and bound by any acts that the agent performs with actual or implied authority from the principal that are within the scope of the agent's employment." Azarchi-Steinhauser v. Protective Life Co., 629 F. Supp. 2d 495, 500 (E.D. Pa. 2009). In Pennsylvania, "[t]he nature and extent of an agent's authority is a question of fact for the trier." Turner Hydraulics, Inc. v. Susquehanna Const. Corp., 606 A.2d 532, 534–35 (Pa. Super. Ct. 1992); see also Great Northern Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp. 2d 723, 746 (W.D. Pa. 2007) ("Ordinarily, the nature and extent of an agent's authority presents a question of fact for the jury.").

Here, although Plaintiff may have granted DiCrecchio authority to open and use an account in PFFTC's name, an issue of fact remains as to whether DiCrecchio had the authority to open the TD Account as a single-signer account and then use it to unilaterally withdraw money from or write checks against Plaintiff's funds. The Complaint alleges that although Defendant's Banking Resolution required multiple pieces of information and identification, that information was never obtained by Defendant, thereby allowing DiCrecchio to unilaterally and improperly establish the TD Account as a single-signer account. The Complaint then states that Defendant issued to DiCrecchio dual-signer checks, which enabled DiCrecchio to mislead Plaintiff into believing that Defendant would only honor checks with two signatures, when, in fact, it permitted DiCrecchio to withdraw funds on his signature alone. Plaintiff claims that, by not taking the basic required steps, Defendant facilitated DiCrecchio's entire scheme and allowed him to exceed the scope of any agency he had.

Taking these facts as true, as I must at the motion to dismiss stage, I find that reasonable minds could differ as to when Plaintiff, exercising diligence, knew or should have known of the injury and its cause. As it is well established that factual issues pertaining to a plaintiff's notice and diligence are for a factfinder, I decline to find the negligence claim time barred at this juncture of the litigation.

        2.    <u>Statutory Negligence Claim</u>

Plaintiff also brings a statutory negligence claim under 13 Pa.C.S. §§ 3405 and 3406. Specifically, Plaintiff alleges that Defendant is negligent both for (a) allowing DiCrecchio to open a sole signer account without authority, and (b) permitting DiCrecchio to deposit and withdraw funds on the account.

Defendant now contends that to the extent Plaintiff's claim is premised on unauthorized withdrawals of funds from the TD Account, the Code's statute of limitations bars the claim. Any claim brought under the Code is subject to a three-year statute of limitations. 13 Pa. Cons. Stat. § 4111. That limitations period, however, is further modified by 13 Pa.C.S. § 4406, which imposes on customers an obligation to report unauthorized signatures or alterations to the bank within one year after receipt of the requisite information from the bank:

> **(a) Statement of account.--**A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount and date of payment.
>
> . . .
>
> **(c) Duty of customer.--**If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
>
> **(d) Effect of failure to report unauthorized signature or alteration.--**If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection (c), the customer is precluded from asserting against the bank:
> (1) the customer's unauthorized signature or any alteration on the item if the bank also proves that it suffered a loss by reason of the failure; and
> (2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.
>
> . . .

> **(f) Statutes of limitations applicable to customer.**--Without regard to care or lack of care of either the customer or the bank, *a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration . . . .*

13 Pa. Const. Stat. § 4406 (emphasis added).

In other words, if the customer notifies the bank within one year of discovering an unauthorized signature or alteration, the customer may bring a suit with the three-year statute of limitations period applicable to § 4406(f) claims. <u>Bucci</u>, 591 F. Supp. 2d at 785. If the customer does not notify the bank within one year of receiving the statement, the customer may not bring suit on those claims or on any other unauthorized signature or alteration by the same wrongdoer. <u>Id.</u> The one-year period does not begin until the bank provides the customer with information "sufficient to allow the customer reasonably to identify the items paid," *i.e.* an account statement. <u>Id.</u> (quoting 13 Pa.C.S. § 4406(a)). This one-year period is not subject to the discovery rule. <u>Menichini v. Grant</u>, 995 F.2d 1224, 1231 (3d Cir. 1993).

Here, Defendant contends that it sent bank statements for the TD Account to Plaintiff. Because the alleged unauthorized transactions were all made by a single wrongdoer—DiCrecchio—Defendant asserts that Plaintiff was required to report the first fraud within thirty days of the first account statement being made available. Yet, according to Defendant, Plaintiff allowed DiCrecchio's fraud to go unchecked for decades without reporting any unauthorized transactions to Defendant.

I find that factual questions, not resolved within the four corners of the Complaint, preclude a finding that the statutory negligence claim is time-barred. While the limitations period in § 4406(f) in not subject to the discovery rule, the statute of limitations period may be tolled by

allegations of fraudulent concealment.  Bucci, 591 F. Supp. 2d at 786–87 (citing Menichini, 995 F.2d at 1231).  To toll the statute of limitations, fraudulent concealment must be demonstrated by an "affirmative independent act of concealment upon which the plaintiff [] justifiably relied."  Kingston Coal Co. v. Felton Min. Co., Inc., 690 A.2d 284, 291 (Pa. Super. Ct. 1997).  "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception."  Fine, 870 A.2d at 860.  In other words, "[t]he doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."  Id.

Plaintiffs allege that Defendant committed fraudulent concealment by providing checks to DiCrecchio that bore two signature lines, which misrepresented the TD Account's single-signer status.  DiCrecchio then used the two signature lines on certain checks to trick Plaintiff into believing Defendant would only honor checks drawn with two signatures.  (Compl. ¶¶ 44, 58–59.) Plaintiff goes on to assert that this affirmative act of concealment was exacerbated by Defendant's knowledge that the TD Account only required a single signer, and that Defendant failed to require evidence, including the Secretary's signature, that the PFFTC Board had met and voted on a resolution to open the TD Account.  (Compl. ¶¶ 23–36.)

Such allegations are sufficient to give rise to a plausible claim of fraudulent concealment by Defendant.  Taking these allegations as true, I cannot find, as a matter of law, that the statutory negligence and conversion claims are barred by the limitations period in § 4406(f).[7]

---

[7]    Plaintiff also asserts that Defendant never entered into a formal customer relationship with Plaintiff with respect to the TD Account and, thus, never sent to Plaintiff the statement of account required to trigger the one-year limitations period of § 4406.  Plaintiff notes that the TD Account was always held in the name of PFFTC, meaning that Plaintiff was never added to the TD Account or formally recognized as a customer.

### D.    Whether Plaintiff Has Plausibly Pled a Common Law Negligence Claim

Defendant next asserts that Plaintiff has no private right of action under the Bank Secrecy Act for negligence in opening the account.   Specifically, the Complaint alleges, in part, that Defendant breached its duty to Plaintiff by failing to train and supervise its employees to adhere to the regulations set forth in the Bank Secrecy Act, 31 U.S.C. § 5311, <u>et seq.</u>   (Compl. ¶ 64(l)–(m).)   Defendant argues that such an allegation seeks to improperly "bootstrap a duty from the Bank Secrecy Act," by alleging that the Customer Identification Program Requirements of the Bank Secrecy Act create a duty of care on Defendant.   (Def.'s Mem. Supp. Mot. Dismiss 10.) Defendant urges that this claim fails because there is no private right of action to enforce the alleged duty, and no duty of care predicated on the statute's monitoring requirements.

Plaintiff responds that it does not attempt to bring a private cause of action under the Bank Secrecy Act.   Rather, Plaintiff cites the Act "to inform the applicable standard of care."   (Pl.'s Opp'n Mot. to Dismiss 12.)   As such,  Plaintiff contends that the banking regulations cited may properly be considered as evidence of Defendant's negligence.

It is undisputed that there is no private right of action under the Bank Secrecy Act.   <u>James v. Heritage Valley Fed. Credit Union</u>, 197 F. App'x 102, 106 (3d Cir. 2006).   As there is no private right of action, courts have repeatedly held that "there can be no duty of care arising out of the [Bank Secrecy Act's] monitoring requirements."   <u>Venture Gen. Agency, LLC v. Wells Fargo</u>

---

Defendant urges that I reject this argument because (1) after PFFTC transitioned its business to Plaintiff in 2011, Plaintiff treated the identities as identical and used the Account as its own; (2) Defendant sent Account transaction statements to Plaintiff's address after PFFTC transitioned its business to Plaintiff; and (3) Plaintiff never alleged that it notified Defendant about the business's name change, as required.

I need not resolve this dispute as I reject the statute of limitations argument on other grounds.   Nonetheless, I note that Defendant premises its response on a series of exhibits that are not properly considered on a motion to dismiss.   Accordingly, this argument is best reserved for a motion for summary judgment.

Bank, N.A., No. 19-2778, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019); see, e.g., Wiand v. Wells Fargo Bank, N.A., 86 F. Supp. 3d 1316, 1322 (M.D. Fl. 2015) (holding that the federal banking laws and regulations give rise to a duty of care to monitor customer accounts and investigate suspicious account activity; "To the extent federal banking statutes such as the Bank Secrecy Act impose duties on banks, those duties extend to the United States, not a bank's customers."), aff'd, 677 F. App'x 573 (11th Cir. 2017); Belle Meade Title & Escrow Corp. v. Fifth Third Bank, 282 F. Supp. 3d 1033, 1040 (M.D. Tenn. 2017) (finding that the Bank Secrecy Act does not create a private right of action and therefore does "not create a common law duty on the part of banks to non-customers."); SFS Check, LLC v. First Bank of Del., 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013) (As the BSA does not create a private right of action, it also "does not provide a basis for imposing a duty of care owed by [the bank] to Plaintiff."), aff'd, 774 F.3d 351 (6th Cir. 2014); In re Agape Litig., 681 F. Supp. 2d 352, 360–61 (E.D.N.Y. 2010) ("because the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements.").[8]

Here, Plaintiff's negligence claim alleges that Defendant had a duty to (1) "act in a manner consistent with generally accepted banking practices," and (2) "implement policies under 31

---

[8]     Plaintiff cites to Shtutman v. TD Bank, N.A., No. 14-792, 2014 WL 1464824 (D.N.J. Apr. 15, 2014) for the proposition that while federal law did not create a private right of action under the Bank Secrecy Act, the federal banking regulations were relevant evidence of negligence under a state law negligence claim.

        Plaintiffs mischaracterize Shtutman.  In that case, the plaintiffs brought a negligence case by relying on the Bank Secrecy Act's reporting requirements as evidence of negligence.  The relevant question was "whether a state common law negligence action which looks to federal statutory and regulatory law for the relevant standard of care arises under the laws of the United States for purposes of § 1331." Id. at *2.  The court found that no federal question was implicated, thus requiring that the case be remanded to state court. Id. at *3.  Although the court acknowledged the plaintiff's argument that the Bank Secrecy Act could impose a duty of care on the defendant for purposes of a negligence claim, it did not opine on whether such a theory was proper. Id. at *2.

C.F.R. § 103.21 which would allow it to appropriately identify its customers during the account opening process via documentary and non-documentary means." (Compl. ¶¶ 62–63.) To the extent the negligence claim relies on the Bank Secrecy Act for a standard of care, I find that this claim is improper and must be dismissed. If, however, Plaintiff's negligence claim is premised on Defendant's breach of its duty to act consistent with generally accepted banking practices, the negligence claim is properly plead under Fed. R. Civ. P. 12(b)(6).

### E. Whether Plaintiff Has Plausibly Pled a Conversion Claim

Defendant's final argument asserts that Plaintiff's cause of action for conversion fails to plead a plausible claim for relief.

Defendant first posits that, under Pennsylvania law, conversion is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification. (Def.'s Mem. Supp. Mot. to Dismiss 12 (citing Bernhardt v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct. 1997).) According to Defendant, Plaintiff never alleges that Defendant had the requisite "intent to exercise dominion or control" over Plaintiff's funds, which is a necessary element for a conversion action. (Id.)

Defendant's argument cites to the requirements for common law conversion without recognizing that Plaintiff's conversion claim is statutory, based on 13 Pa. Cons. Stat. § 3420. Under this statute, an instrument is converted if "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the payment or receive payment." Id. § 3420(a). The statute includes no required element of intent on the part of the bank. In accordance with the statute, the Complaint specifically alleges that "TD Bank allowed DiCrecchio to utilize the TD Account to deposit and withdraw Plaintiff's funds in the absence of any authorization from the PFFTC Board or Plaintiff's Board and where Plaintiff was not a named user of the account."

(Compl. ¶ 80.) As such an allegation properly pleads conversion under the statute, I reject this portion of Defendant's argument.

Second, Defendant asserts that, under the statute, "[a]n action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee." 13 Pa. Cons. Stat. § 3420(a). An "issuer" is a "maker or drawer of an instrument." 13 Pa. Cons. Stat. § 3105(c). A "drawer" is the "person who signs or is identified in a draft as a person ordering payment." 13 Pa C.S.A. § 3103(a). Comment one to the statute explains that, "[t]here is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer. The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check." 13 Pa. Cons. Stat. § 3420, cmt. 1.

Pursuant to this authority, Defendant contends that Plaintiff's conversion claim fails because Plaintiff is the issuer of the checks that were allegedly converted. It asserts that DiCrecchio, who signed the checks, was acting in his capacity as the President and CEO of Plaintiff. Defendant reasons that even though DiCrecchio is deemed to have embezzled the checks, DiCrecchio was the agent of Plaintiff for purposes of issuing the checks, thereby making Plaintiff the "drawer" or "issuer" of the checks. See Sebastian v. D&S Exp., Inc., 61 F. Supp. 2d 386, 390 (D.N.J. 1999) (finding, under Pennsylvania law, that a company could not bring a conversion claim against bank for cashing checks issued by company president to fictitious payees because president was agent of company, making the company the issuer of the checks).

Taking as true the facts in the Complaint, it is not clear that Plaintiff was, in fact, the issuer of the checks. According to the Complaint, the Account was opened on behalf of Plaintiff's

predecessor company, PFFTC. (Compl. ¶¶ 3, 41.) At all relevant times, PFFTC was the named account holder, and Plaintiff's name never appeared on the account. (Id. ¶¶ 42–43.) Checks bearing PFFTC's name were written from the Account for Plaintiff's business, and instruments made payable to Plaintiff were being deposited into the Account in PFFTC's name. (Id. ¶¶ 43, 48.) The conversion claim alleges that Defendant "allowed DiCrecchio to utilize the TD Account to deposit and withdraw [Plaintiff]'s funds in the absence of any authorization from the PFFTC or [Plaintiff] Board and where [Plaintiff] was not a named user of the account." (Id. ¶ 80.)

Although Defendant urges that Plaintiff's focus on the TD Account's name ignores the reality that Plaintiff was Defendant's *de facto* customer, this argument relies on facts outside the four corners of the Complaint. While this argument may ultimately prove to have merit, it is best reserved for a motion for summary judgment. Bound by the Fed. R. Civ. P. 12(b)(6) standard, I decline to dismiss the conversion claim on this ground.

## IV.    CONCLUSION

In light of the foregoing, I will grant Defendant's Motion to Dismiss in part and deny it in part. As a primary matter, I decline Defendant's request to consider the Business Deposit Account Agreement attached as an exhibit to its Motion. Defendant's Motion to Dismiss Plaintiff's common law negligence claim in Count I will be granted to the extent the claim attempts to impose a duty of care premised on the Bank Secrecy Act (Compl. ¶ 64(l)–(m), but otherwise will be denied. Defendant's Motion to Dismiss Plaintiff's statutory negligence claim (Count II) as time barred and Plaintiff's statutory conversion claim (Count III) as improperly pled will be denied. Finally, as there is no plausible cause of action in Pennsylvania for aiding and abetting conversion, I will grant the Motion to Dismiss this claim (Count IV).

An appropriate Order follows.