**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REGIONAL PRODUCE COOPERATIVE CORPORATION, d/b/a PHILADELPHIA WHOLESALE PRODUCE MARKET, | : : : : |
| Plaintiff, | : : Case No.: 2:19-cv-01883-MSG |
| v. | : : |
| TD BANK, N.A., | : : |
| Defendant. | : |

**TD BANK N.A.'S MEMORANDUM OF LAW
SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT**

Ryan E. Borneman (203540)
Lynne E. Evans (313479)
Breeana J. Somers (325952)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
REBorneman@duanemorris.com
LEEvans@duanemorris.com
BJSomers@duanemorris.com
Tel: (215) 979-1000
Fax: (215) 979-1020

Dated:  April 29, 2022

*Attorneys for Defendant TD Bank, N.A.*

**TABLE OF CONTENTS**

I.  INTRODUCTION ..............................................................................................1

II. FACTS ............................................................................................................3

    A.  RPCC's Predecessor, PFFTC, Had Single-Signer Accounts With
        Commerce, TD Bank's Predecessor, Dating Back to 1998. .................................. 3

        1.  PFFTC Opened a Single-Signer Account with Commerce in 1998 that
            continued to 2018 .......................................................................................... 3

        2.  After Unrelated Fraud Occurred on the -3085 Account, PFFTC Requested
            that TD Bank Change the Account Number ................................................ 3

    B.  DiCrecchio Had Authority To Open The -5031 Account, and Bound
        PFFTC To The Terms of the Account Agreement ................................................. 4

        1.  DiCrecchio Had Authority To Enter Contracts On the Market's Behalf,
            and Bound PFFTC To The Terms of the Deposit Rules and Regulations .. 4

        2.  Under the Account Agreement, the Market Agreed There Are No Two-
            Signer Accounts and to Notify TD Bank with Thirty Days of Any
            Unauthorized Transactions or Change in Business Structure .................... 5

    C.  In 2011, the New Market Opened, PFFTC's Business Was Transitioned to
        RPCC and RPCC Continued to Use The -5031 Account ...................................... 6

    D.  DiCrecchio Started Embezzling from the Market Before the -5031
        Account Was Opened, and Continued Until He Ultimately Confessed in
        2018 ...................................................................................................................... 6

    E.  TD Bank Sent RPCC Monthly Account Statements with Check Images
        Showing Checks Signed by DiCrecchio Only, But RPCC Failed To Report
        A Single Unauthorized Transaction Until After DiCrecchio Confessed in
        2018 ...................................................................................................................... 9

III. RELEVANT PROCEDURAL HISTORY .......................................................10

IV. ARGUMENT ................................................................................................11

    A.  Rule 56 Compels Dismissal of RPCC's Remaining Claims ................................. 11

    B.  Judgment Should Be Entered in Favor of TD Bank on RPCC's Statutory
        Negligence Claim (Count II) Because RPCC Failed To Give Timely
        Notice of Any Unauthorized Transactions. ......................................................... 12

1.      The Repeater Rule Bars RPCC's Statutory Negligence Claim In Its Entirety...................................................................................... 12

2.      Alternatively, the UCC's One-Year Limitation Bars RPCC's Claims That Occurred Before August 16, 2017. .......................................... 15

3.      Fraudulent Concealment is Not a Defense to the PA UCC Repeater Rule or The One-Year Limitation Because Each is a Limitation on RPCC's Ability to Recover Damages and Not a Statute of Limitation. ................. 16

C.      Judgment Should Be Entered in Favor of TD Bank on RPCC's Claim for Common Law Negligence (Count I)...................................................... 18

1.      The PA UCC Displaces RPCC's Common Law Negligence Claim Based On Allegedly Unauthorized Transactions.................................... 18

2.      RPCC's Common Law Negligence Claims Are Barred By the Two-Year Statute of Limitations................................................................ 20

3.      RPCC's Negligence Claim Fails Because DiCrecchio Had Authority To Open and To Transact on the -5031 Account, and RPCC Ratified This Authority. ................................................................................ 23

4.      RPCC's Negligence Claim Based on Account Use Further Fails Because TD Bank Had No Duty to Monitor RPCC's Account for Fraud. ............. 26

5.      RPCC's Account Agreement with TD Bank Bars RPCC's Account Use Claim........................................................................................ 27

D.      Judgment Should Be Entered in Favor of TD Bank on RPCC's Statutory Conversion Claim (Count III) Because RPCC, as the Issuer of the Checks, Cannot Bring a Conversion Claim..................................................... 28

V.      CONCLUSION..........................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Armbruster v. Unisys Corp.*, 32 F.3d 768 (3d Cir. 1994), abrogated on other grounds, *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231 (3d Cir. 1999) ................................................................................................................12

*AT & T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ...................23

*Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562 (E.D. Pa. 2009) ................................................................................................................11

*Brandywine Professional Services, LLC v. Quigley*, Civ. No. 13-2865, 2015 WL 6598537 (E.D. Pa. Oct. 30, 2015)................................................................28

*Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773 (E.D. Pa. 2008) ...................................*Passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .....................12

*Citizens Bank of Pennsylvania v. Chevy Chase Bank*, CIV.A. 03-CV-5208, 2004 WL 875499 (E.D. Pa. Mar. 22, 2004)......................................................................28

*Cornelius v. PNC Bank, N.A.*, No. 2:21-cv-106, 2022 WL 426609 (W.D. Pa. Feb. 11, 2022) ................................................................................................................20

*Deutsch v. Wells Fargo Bank, N.A.*, No. CIV.A. 13-3914, 2015 WL 3833226 (E.D. Pa. June 22, 2015) ...................................................................................14

*Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705 (E.D. Pa. 2010) ................................................................................................................*Passim*

*Estate of Clark ex rel. Clark v. Toronto Dominion Bank*, Civ. No. 12-cv-6259, 2013 WL 1159014 (E.D. Pa. Mar. 21, 2013).................................................. 16-17

*Gress v. PNC Bank, Nat'l Ass'n*, 100 F. Supp. 2d 289 (E.D. Pa. 2000) (concluding PA UCC displaces common law negligence claim) ........................................19, 30

*H.G. Litigation Group, LLC v. TD Bank, N.A.*, Civ. No. 5:22-cv-00305-JMG, 2022 WL 1103791 (E.D. Pa. Apr. 13, 2022) (Gallagher, J.) ...................... 1, 5-6, 19

*Health & Welfare Fund of Philadelphia & Vicinity v. A & B Metal & Roofing, Inc.*, 976 F. Supp. 341 (E.D. Pa. 1997) ........................................................... 23-24

*Hoffman v. Paper Converting Machine Co.*, 694 F. Supp. 2d 359 (E.D. Pa. 2010).....................26

*In re Lyondell Chem. Co.*, No. 16CV518 (DLC), 2016 WL 5818591 (S.D. N.Y. Oct. 5, 2016) ................................................................................................24

*Mack v. CTC Ill. Trust Co.*, No. 04-CV-0083, 2004 U.S. Dist. LEXIS 13997 (E.D. Pa. July 19, 2004)...............................................................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (U.S. 1986) ...........................12

*Menichini v. Grant*, 995 F.2d 1224 (3d Cir. 1993)...........................................................18, 22, 31

*Mercantanti v. Wci Operations Llc*, 2015 U.S. Dist. LEXIS 42475 (E.D. Pa. Mar. 31, 2015) ...............................................................................................................................11

*Mest v. Cabot Corp.*, 449 F.3d 502 (3d Cir. 2006) .......................................................................21

*Option One Mortg. Corp. v. Fitzgerald*, 687 F. Supp. 2d 520 (M.D. Pa. 2009)...........................30

*Ormsby v. Luzerne County Dept. of Public Welfare Office of Human Services*, No. 05–2453, 2005 WL 2184759 (3d Cir. Sept. 12, 2005) ...........................................................21

*Perelman v. Perelman*, 545 F. App'x 142 (3d Cir. 2013) ............................................................21

*Sebastian v. D & S Exp., Inc.*, 61 F. Supp. 2d 386 (D. N.J. 1999) ...............................................29

*Smith v. Bic Corp.,* No. CIV.A. 87-0795, 1988 WL 71362 (E.D. Pa. July 1, 1988) ....................24

*St. Julien v. Andrews*, CIV. A. 972236, 1998 WL 134223 (E.D. Pa. Mar. 24, 1998) .............................................................................................................................. 28-29

*The Knit With v. Knitting Fever, Inc.*, Civ. Nos. 08-4221, 08-4775, 2009 WL 3427054 (E.D. Pa. Oct. 20, 2009)...........................................................................................27

*Washington v. City of Philadelphia*, Civ. No. 17-4706, 2021 WL 949461 (E.D. Pa. Mar. 12, 2021) (Goldberg, J.) ...........................................................................................11

*Young v. City of Philadelphia*, 744 F. Supp. 673 (E.D. Pa. 1990)................................................20

**State Cases**

*Family Partners Worldwide, Inc. v. SunTrust Bank, Atlanta*, 242 Ga.App. 618-620, 530 S.E.2d 742 (Ga. App. 2000).......................................................................................24

*Gennone v. Peoples Nat'l Bank & Trust Co.*, No. 4574, 1971 Pa. Dist. & Cnty. Dec. LEXIS 551 (C.P. Montgomery Jan. 21, 1971).................................................................13

*Globe Motor Car Co. v. First Fidelity Bank, N.A.*, 273 N.J.Super. 388, 641 A.2d 1136 (N.J. 1993) ..........................................................................................................................26

*Grassi Design Grp., Inc. v. Bank of Am., N.A.,* 908 N.E.2d 393 (Mass. App. Ct. 2009) .......................................................................................................................................14

*Estate of Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472 (Pa. Super. Ct. 2004) ......................................................................................................2, 22, 28, 31

*Kingston Coal Co. v. Felton Min. Co., Inc.*, 456 Pa.Super. 270, 690 A.2d 284 (1997) ...........................................................................................................................16

*Lebanon Cty. Earned Income Tax Bureau v. Bank of Lebanon Cty.*, No. 2007-01270, 2011 WL 12847599 (Pa. Com. Pl. Jan. 10, 2011) ......................................26

*Metro Waste, Inc. v. Wilson Check Cashing, Inc.*, No. 2117, 2003 Phila Ct. Com. Pl. LEXIS 56 (Pa. Commw. Ct. Sept. 23, 2003).................................................19

*Nova Realty v. Am. Risk Reduction Servs.*, 2014 WL 10575442 (Pa. Super. Ct. Sept. 30, 2014) ...........................................................................................................20

*Travelers Indem. Co. v. Good*, 737 A.2d 690 (N.J. Super. App. Div. 1999)................................14

*Travelers Indemnity Co. v. Citibank Delaware*, No. 04-13868, 2007 Pa. Dist. & Cnty. Dec. LEXIS 314 (Pa. Commw. Ct. Aug. 29, 2007).................................19, 29

*United States Steel Corp. v. Express Enterprises of Pennsylvania, Inc.*, No. 0140, 2006 Phila. Ct. Com. Pl. LEXIS 149 (Pa. Commw. Ct. March 22, 2006) ...........19

*W.C.A.B. v. Evening Bulletin*, 445 A.2d 1190 (Pa. 1982)...............................................24

**Regulatory Cases**

*Levy Baldante Finney & Rubenstein, P.C. v. Wells Fargo Bank, N.A.*, No. 3241 EDA 2016, 2018 WL 847756 (Pa. Super. Ct. Feb. 14, 2018) ..................................26

*Residential Reroofers Loc. 30-B* ......................................................................................23

**Federal Statutes**

Bank Secrecy Act.................................................................................................................10

**State Statutes**

13 Pa. C.S.A. § 3103(a) .....................................................................................................29

13 Pa. C.S.A. § 3105(c) ......................................................................................................29

13 Pa. C.S.A. § 3118(g) ................................................................................................17, 30

13 Pa. C.S.A. § 3404 ..........................................................................................................19

13 Pa. C.S.A. § 3405 ...........................................................................................2, 10, 15, 19

13 Pa. C.S.A. § 3406 ...........................................................................................2, 10, 15, 31

13 Pa. C.S.A § 3420 ................................................................................................ 10, 29-30

13 Pa. C.S.A. § 3420(a) ................................................................................................ 28-29

42 Pa. C.S.A. § 5524 ................................................................................................ 20

13 Pa. Cons. Stat. § 4406 ................................................................................................ *Passim*

13 Pa. Cons. Stat. § 4406(a) ................................................................................................ 13

13 Pa. Cons. Stat. § 4406(c) ................................................................................................ 13

13 Pa. Cons. Stat. § 4406(d) ................................................................................................ 13

13 Pa. Cons. Stat. § 4406(f) ................................................................................................ 16-18

PA UCC ................................................................................................ *Passim*

UCC ................................................................................................ *Passim*

UCC Article 3 ................................................................................................ 20

UCC Article 4 ................................................................................................ 20

**Rules**

Rule 56 ................................................................................................ 11

Rule 56(c) ................................................................................................ 12

**Regulations**

Business Statement Savings Account number -5470 ................................................................................................ 3

TD_0005761 ................................................................................................ 33

TD_0005770 ................................................................................................ 33

**INDEX OF EXHIBITS**

| Exhibit | Description |
| --- | --- |
| Compl. | Regional Produce Cooperative Corporation d/b/a Philadelphia Wholesale Produce Market v. TD Bank, N.A., dated April 11, 2019 |
| 2 | Signature Card for the Business Checking Account in the -5031, dated July 30, 2009 |
| 3 | Temporary Signature Card for the Business Checking Account ending in -3085, dated June 6, 2000 |
| 4 | Bylaws of Regional Produce Cooperative Corporation, dated March 11, 2011 |
| 6 | Bylaws of Regional Produce Cooperative Corporation, dated August 12, 2008 |
| 9 | For Profit Corporate Banking Resolution, dated July 31, 2009 |
| 25 | RPCC's Civil Complaint Against Accountants, dated July 30, 2020 |
| 31 | March 2018 Statement for PFFTC Account ending -5031 |
| 32 | March 2017 Statement for PFFTC Account ending -5031 |
| 33 | March 2016 Statement for PFFTC Account ending -5031 |
| 34 | March 2015 Statement for PFFTC Account ending -5031 |
| 35 | March 2014 Statement for PFFTC Account ending -5031 |
| 36 | March 2013 Statement for PFFTC Account ending -5031 |
| 37 | March 2012 Statement for PFFTC Account ending -5031 |
| 38 | March 2011 Statement for PFFTC Account ending -5031 |
| 44 | Email from Pat Pumphrey to Sonny DiCrecchio, dated March 21, 2011 |
| 45 | Email from Pat Pumphrey to Sonny DiCrecchio, dated September 26, 2012 |
| 46 | Email from Pat Pumphrey to Sonny DiCrecchio, dated October 5, 2012 |

| Exhibit | Description |
|---------|-------------|
| 48 | Email from Patricia Pumphey to Stephanie Talotti, dated October 11, 2012 |
| 49 | Email from Pat Pumphrey to Stephanie Talotti, dated October 12, 2012 |
| 50 | Email from Pat Pumphrey to Sonny DiCrecchio, dated October 17, 2012 |
| 54 | Email from Pat Pumphrey to Cecelia Zepp, dated November 30, 2016 |
| 67 | Deposit Account Rules and Regulations, 2008 |
| 77 | March 2010 Statement for PFFTC Account ending -5031 |
| 87 | Email from Pat Pumphrey to Sonny DiCrecchio re: TD Bank, dated July 1, 2009 |
| 88 | Email from Kelley Tuck to Sonny DiCrecchio, dated July 1, 2009 |
| 91 | Board Minutes, dated July 10, 2018 |
| 99 | Signature Card for PFFTC's Business Statement Savings Account ending in -5470, dated April 2, 1998 |
| 108 | RPCC Damages Spreadsheet |
| 109 | Checks Issued to Jonathan Advisors |
| 111 | Information-Indictment against DiCrecchio, dated March 10, 2021 |
| 112 | Information-Indictment against Pumphrey, dated March 10, 2021 |
| 169 | Email from Pat Pumphrey to Sonny DiCrecchio, dated June 26, 2009 |
| 180 | Affidavit of Dr. T. Leonard Probe, dated October 18, 2021 |
| 182 | Email from Pumphrey to Kane, dated September 10, 2009 |
| 188 | Pumphrey Loss Calculation, dated June 28, 2021 |
| 254 | Email from Stephanie Talotti to employees of the Whitman store, dated May 22, 2009 |
| 261 | Regional Produce Cooperative Corporation's Objections and Responses to Defendant TD Bank, N.A.'s First Set of Interrogatories to Plaintiff |

| Exhibit | Description |
|---|---|
| 262 | Email dated August 16, 2018 from Thomas Marino |
| 263 | Email from Thomas Marino to JoAnn Hart, dated August 15, 2018 |
| 264 | September 2009 Statement for PFFTC Account ending -5031 |
| 265 | May 2011 Statement for PFFTC Account ending -5031 |
| | Deposition of Joseph Robinson, dated December 2, 2021 (the "**Robinson Deposition**") |
| | Deposition of George Binck, dated September 29, 2021 (the "**Binck Deposition**") |
| | Deposition of George Manos, dated November 19, 2020 (the "**Manos Deposition**") |
| | Deposition of Caesar DiCrecchio Day 1, dated December 8, 2021 (the "**DiCrecchio Deposition Day 1**") |
| | Deposition of Patricia Pumphrey, dated December 7, 2021 (the "**Pumphrey Deposition**") |
| | Deposition of John DiFeliciantonio, dated December 14, 2021 (the "**DiFeliciantonio Deposition**") |
| | Deposition of Louis Penza, dated November 20, 2020 (the "**Penza Deposition**") |
| | Deposition of Thomas Fleming Day 1, dated December 21, 2021 (the "**Fleming Deposition Day 1**") |
| | Deposition of Filindo Colace, dated September 23, 2021 (the "**Colace Deposition**") |
| | Deposition of Mark Levin, dated November 9, 2020 (the "**Levin Deposition**") |
| | Deposition of John Vena, dated November 17, 2020 (the "**Vena Deposition**") |

Defendant TD Bank, N.A. ("***TD Bank***") submits the following brief in support of its motion for summary judgment.

## I.      INTRODUCTION

This lawsuit arises from an egregious 12-year, $8 million embezzlement scheme perpetrated by Caesar "Sonny" DiCrecchio ("***DiCrecchio***"), the former President and CEO of Plaintiff Regional Produce Cooperative Corporation, d/b/a Philadelphia Wholesale Produce Market ("***RPCC***"). RPCC, having failed to catch its own employee's fraud, deflected its responsibility and sued TD Bank for opening an account that RPCC and its predecessor, the Philadelphia Fresh Food Terminal Corporation ("***PFFTC***", collectively with RPCC, "***the Market***") used for almost two decades. It is undisputed that TD Bank sent account statements each month with check images showing DiCrecchio's fraudulent transactions, and yet RPCC failed to report a single unauthorized transaction to TD Bank until August 16, 2018, and only after DiCrecchio confessed his embezzlement scheme to RPCC's Board. This is fatal to RPCC's claims.

DiCrecchio's scheme was shockingly simple: DiCrecchio, who was the sole signer on the Market's TD Bank business checking accounts since May 2000, would sign Market checks and then direct Patricia Pumphrey ("***Pumphrey***"), the Market's bookkeeper, to code these transactions as legitimate expenditures, for example as maintenance, snow removal, insurance, legal fees, and other false expenses, in RPCC's Quickbooks. DiCrecchio's embezzlement was well documented, both in the monthly bank statements and the Market's accounting records and in plain sight for RPCC to see. Additionally, DiCrecchio's embezzlement started in 2006 – years before the Market even opened the account at issue in this case.

Nevertheless, RPCC now boldly and self-servingly blames DiCrecchio's embezzlement scheme on TD Bank and several other parties that had even less responsibility for RPCC's

finances than did RPCC itself. Specifically, RPCC has sued TD Bank, DiCrecchio and his wife, RPCC's outside accountants, and the check cashing entity that allowed DiCrecchio to cash his fraudulent checks. As the old saying goes: "If you're pointing the finger at everyone else, it's time to look at yourself."

But RPCC's attempt to shift responsibility to TD Bank is misplaced. Under well-established law concerning the relationship between a bank and its customer, because TD Bank made monthly account statements available, irrespective of the duty of care of TD Bank and RPCC, RPCC is precluded from recovering on fraudulent transactions that were not timely reported to TD Bank. And none were.

TD Bank is entitled to summary judgment on RPCC's claims for UCC negligence, common law negligence, and UCC conversion for three reasons:

**First**, RPCC's UCC negligence claim under 13 Pa. C.S. §3405 and §3406 should be dismissed because RPCC failed to timely report any unauthorized transactions to TD Bank;

**Second**, RPCC's common law negligence claim fails and should be dismissed because (i) the PA UCC displaces the common law negligence claim based on allegedly unauthorized transactions, (ii) the claim is barred by the two-year statute of limitations, (iii) DiCrecchio had authority to open and transact on the -5031 Account, and RPCC ratified this authority, (iv) TD Bank had no duty to monitor RPCC's account for fraud and (v) the Account Agreement bars the account use claim; and

**Third**, RPCC's UCC conversion claim fails and should be dismissed because RPCC, as the issuer of the checks, cannot maintain a conversion claim, and RPCC was never deprived access to the funds its own agent deposited into the account.

II.     **FACTS**

A.      **RPCC's Predecessor, PFFTC, Had Single-Signer Accounts With Commerce, TD Bank's Predecessor, Dating Back to 1998.**

1.      **PFFTC Opened a Single-Signer Account with Commerce in 1998 that continued to 2018**

PFFTC commenced a banking relationship with Commerce in 1998 when PFFTC opened Business Statement Savings Account number -5470 (the "**-5470 Account**").[1] PFFTC designated four individuals as authorized signers on the -5470 Account, but they agreed, consistent with Commerce's policy, that only one signature was required on checks or withdrawals.[2] At that time, and at every time since then, Commerce and TD Bank only offered single-signer accounts, meaning that the signature of only one authorized signer was required on checks and withdrawals, even if there were multiple authorized signers on an account.[3]

On May 25, 2000, DiCrecchio, PFFTC's Market Manager / Executive Director, opened Business Checking Account number -3085 in PFFTC's name (the "**-3085 Account**").[4] DiCrecchio was the sole signer on the -3085 Account.[5] Like the -5470 Account, the -3085 Account was a single-signer account.[6] No one from PFFTC ever disputed that DiCrecchio was authorized to be the sole signer on the -3085 Account, which was used from May 2000 until July 2009.[7]

2.      **After Unrelated Fraud Occurred on the -3085 Account, PFFTC Requested that TD Bank Change the Account Number**

In 2009, PFFTC was the victim of fraud perpetrated by a check-counterfeiting ring, unrelated to the fraud at issue in this case.[8] After reviewing several fraud prevention options provided by TD Bank, PFFTC opted to have TD Bank issue a new account number to PFFTC to prevent further fraud from occurring on the -3085 Account.[9] On July 30, 2009, TD Bank did

issue PFFTC a new account number, which account number ended in -5031 (the "***-5031 Account***").[10]

Just as he had been on the -3085 Account, DiCrecchio was the sole signer on the -5031 Account.[11] Further, like both the -5470 Account and the -3085 Account before it, the -5031 Account was a single-signer account.[12]

### B. DiCrecchio Had Authority To Open The -5031 Account, and Bound PFFTC To The Terms of the Account Agreement

#### 1. DiCrecchio Had Authority To Enter Contracts On the Market's Behalf, and Bound PFFTC To The Terms of the Deposit Rules and Regulations

At the time the account number ending in 5031 Account was issued in July 2009, DiCrecchio had already been the sole signer on PFFTC's prior -3085 Account for **nine years**.[13] Further, in July 2009, DiCrecchio was the Market's President and CEO, and was expressly authorized by RPCC's Bylaws to enter into contracts and to "sign all checks or demands for money and notes of the Corporation."[14]

On July 30, 2009, DiCrecchio, acting as PFFTC's agent, signed the Business Signature Card for the -5031 Account and affirmed that he was an "authorized individual", that he had the "required authority to act with respect to this account(s)", that TD Bank had "no responsibility or duty to assure or verify that Authorized individual(s) have or are acting within the authority given them…", that he, on the company's behalf, "agreed to the terms set forth in the Deposit Account Rules and Disclosures," and acknowledged that the bank "provided at least one copy of these deposit account documents."[15]

At the time the -3085 Account was changed to the -5301 Account, TD Bank provided the Market a copy of the operative account agreement, the Deposit Account Rules and Regulations ("***Account Agreement***").[16] TD Bank always provided a copy of the Account Agreement to every

customer and DiCrecchio testified that he had no reason to doubt that he received a copy at the time of the -5031 Account opening.[17] As expressly stated in the Account Agreement, its terms applied to "each and all of the depositors" on the account.[18] It is undisputed that RPCC used and was a depositor on the -5031 Account.[19]

> ### 2. Under the Account Agreement, the Market Agreed There Are No Two-Signer Accounts and to Notify TD Bank with Thirty Days of Any Unauthorized Transactions or Change in Business Structure

The Account Agreement specifically and unequivocally states that ***TD Bank does "not offer accounts on which two or more signatures are required for a check or other withdrawal"*** and that any provision requiring "two or more signers on items drawn on the Account, . . . is solely for [the customer's] internal control purposes and is not binding on [TD Bank]."[20] Furthermore, even if "more than one person is authorized to write checks or draw items on [a customer's] Account, [the customer] agree[s] that [TD Bank] can honor checks signed by any Authorized Signer, even if there are two or more lines on the items for [the customer's] signature and two signatures are required."[21]

The Market further agreed that it would review its account statements and report any unauthorized transactions to TD Bank.[22] Specifically, ***the Market agreed that it was "responsible[1] for promptly examining [its] statement each statement period and reporting any irregularities to [TD Bank]."[23]*** Further, ***the Market agreed that TD Bank would not be liable for any check that is altered or forged unless the Market***:

> ***notif[ies] [TD Bank] within*** a reasonable amount of time, not to exceed ***thirty (30) calendar days after the statement and the altered or forged item(s) are made available***. Also, ***[TD Bank] will not be liable for any subsequent items paid, in good faith, containing an unauthorized signature or alteration by the same wrongdoer***

---

[1] Emphasis added throughout unless otherwise indicated.

> *unless [the customer] notif[ies] [TD Bank] within Thirty (30)*
> *calendar days after the statement and first altered or forged items*
> *were made available.*[24]

The Market also agreed to notify TD Bank, in writing, of any changes in the persons authorized or the form of ownership of PFFTC.[25]

### C.   In 2011, the New Market Opened, PFFTC's Business Was Transitioned to RPCC and RPCC Continued to Use The -5031 Account

On July 14, 2008, PFFTC created a new non-profit cooperative corporation, RPCC, so that it could enter into contracts to build a newer and more up-to-date building for the Market.[26] The Market's new building opened on June 5, 2011 and PFFTC's business was transitioned to and conducted by RPCC around that time.[27]

Even though the -5031 Account was opened in PFFTC's name, it is undisputed that both PFFTC and RPCC used the -5031 Account to transact their business.[28] As RPCC admitted in its Complaint, "when payments made payable to RPCC were routed through the [-5031] Account, RPCC became a de facto co-owner of the [] Account."[29]

Neither PFFTC nor RPCC informed TD Bank about PFFTC's name change or any change in the -5031 Account's ownership until October 2012.[30] TD Bank reached out to RPCC on several occasions to let it know that a resolution was needed to change the name on the -5031 Account, but RPCC never provided one.[31] Around the same time, RPCC requested additional signers be added to the -5031 Account as authorized individuals to transact on behalf of RPCC.[32] DiCrecchio was to remain an authorized signer of the -5031 Account.[33]

### D.   DiCrecchio Started Embezzling from the Market Before the -5031 Account Was Opened, and Continued Until He Ultimately Confessed in 2018

DiCrecchio's embezzlement started in 2006 and lasted until he confessed to RPCC's Board on August 14, 2018.[34] On August 16, 2018, RPCC notified TD Bank that DiCrecchio was terminated for his embezzlement.[35] Consistent with its improper focus on the -5031 Account,

RPCC ignores the earlier fraud and limits its damages by asserting that DiCrecchio embezzled over five and a half million dollars from RPCC since 2011 when the new Market opened.[36] DiCrecchio's fraud scheme included the following categories:[37]

| Description | Amount |
|---|---|
| Checks Written for Rent or Maintenance of Stone Harbor Home | $1,319,492 |
| Checks Written to Third Parties, Cashed by DiCrecchio | 640,147 |
| Checks Written to DiCrecchio or for his Benefit | 267,642 |
| Checks Written to or for the Benefit of DiCrecchio's Friends and Family | 841,275 |
| Checks Written to Charities | 265,737 |
| Additional Payments to Employees | 1,689,358 |
| Personal Charges to Credit Cards Paid with Company Funds | 470,056 |
| **Total** | **$5,493,707** |

DiCrecchio's scheme was not intricate or elaborate.[38] PFFTC, and later RPCC, ordered checks with two signatures lines for the -5031 Account.[39] It is undisputed that ***PFFTC and RPCC ordered these checks through a third-party vendor Orbis Solutions, not TD Bank***.[40] DiCrecchio directed Patricia Pumphrey, the Market's Office Manager and Bookkeeper, to sign his name and to obtain a Board member's signature on checks for legitimate business expenses.[41] ***RPCC Board members were undisputedly aware of the -5031 Account in PFFTC's name, as they signed numerous checks bearing PFFTC's name during the time the -5031 Account was opened***.[42] For fraudulent expenses, DiCrecchio would have Pumphrey sign his name only on checks without obtaining a countersignature.[43] To "hide" his fraud, DiCrecchio directed Pumphrey to record all fraudulent payments as legitimate business expenditures, for example as maintenance, snow removal, insurance, legal fees and other false codes.[44]

No one from RPCC ever reported any unauthorized transaction to TD Bank until *after* DiCrecchio's confession in 2018.[45] Even so, Pumphrey, testified that she had actual knowledge of the fraud dating back years and years to RPCC's old market.[46] DiCrecchio also made an unauthorized $180,000 loan in 2014 to John DiFeliciantonio, an RPCC Board member and

Board Secretary, which DiFeliciantonio failed to tell anyone about until after DiCrecchio's confession.[47] Furthermore, no one from RPCC ever reported that DiCrecchio was not authorized to be the sole signer on the -5031 Account.[48]

DiCrecchio began embezzling PFFTC's funds in 2006 to pay for the rent and maintenance of a $2.25 million dollar shore home located in Stone Harbor, New Jersey ("**_Stone Harbor house_**").[49] Beginning in 2006, DiCrecchio directed Pumphrey to write monthly checks for $20,000 payable to "Jonathan Advisors" for rent for the Stone Harbor house.[50] Between February 2014 and January 2017, DiCrecchio ceased writing checks directly to Jonathan Advisors and, instead, directed Pumphrey to write monthly checks to two fictitious companies.[51] DiCrecchio would cash these checks at United Check Cashing and convert the cash into money orders that he would use to pay the rent on the Stone Harbor house.[52] DiCrecchio testified that United Check Cashing would cash these checks for DiCrecchio without questioning why he was cashing checks made payable to a business, asking him for paperwork evidencing his affiliation with the businesses, or requesting to see his identification.[53]

Sometime in 2017, United Check Cashing eventually refused to allow DiCrecchio to cash checks made payable to the two fictitious entities because he did not have paperwork to show that he was affiliated with either of them.[54] DiCrecchio then started directing Pumphrey to make checks payable to "Ferguson Dechert," the subsequent property manager of the Stone Harbor house, for the new rent amount of $14,167.[55] DiCrecchio then directed Pumphrey to designate these payments in QuickBooks as "Trash and Recycling".[56] In total, DiCrecchio embezzled over $1.9 million in RPCC funds to pay for the rent and maintenance of the Stone Harbor house.[57]

In a similar pattern, DiCrecchio embezzled from the Market by directing Pumphrey to write checks payable to DiCrecchio or to a fictitious entity, which would be cashed at United

Check Cashing,[58] to pay over millions of dollars to friends, relatives, and organizations unrelated to the Market's operations[59], to make contributions to various charities and local organizations, such as string bands,[60] and to pay numerous co-workers excess compensation outside of the payroll program to avoid employment taxes.[61]

Further, in addition to funds that flowed through the -5031 Account, DiCrecchio also embezzled cash from RPCC.[62] DiCrecchio diverted incoming checks that were intended for the Market for pallet sales, and skimmed cash from the Market's Pay Gate, and directed Pumphrey to distribute that cash to numerous Market employees as "under-the-table" additional cash compensation.[63]

### E. TD Bank Sent RPCC Monthly Account Statements with Check Images Showing Checks Signed by DiCrecchio Only, But RPCC Failed To Report A Single Unauthorized Transaction Until After DiCrecchio Confessed in 2018

RPCC received bank statements from TD Bank on a monthly basis, which showed all activity on the -5031 Account for the month as well as images of ***all*** checks written out of the -5031 Account.[64] Although the bank statements listed PFFTC's name on the account, ***it is undisputed that the account statements were sent to RPCC's address*** at 6700 Essington Avenue, STE. J232, Philadelphia, PA 19153,[65] ***and that RPCC was using the -5031 Account as its own***.[66] During discovery, the monthly account statements and check images located in RPCC's offices were scanned for production.[67] Pumphrey also confirmed that she received these statements and performed a reconciliation of these bank statements.[68]

***The monthly account statements showed that hundreds of checks written from the -5031 Account had only DiCrecchio's signature, and showed regular payments to Jonathan Advisors***.[69] But, no one other than Pumphrey ever reviewed the company's bank statements prior

to DiCrecchio's confession.[70] RPCC admitted that if they had reviewed the bank statements, they would have been able to see that DiCrecchio had been the sole signer on multiple checks.[71]

In fact, the first time a RPCC Board member inquired about bank statements from its accounting staff was the month prior to DiCrecchio's confession.[72] At the July 2018 Board meeting, George Manos ("***Manos***") stated that



[73] Manos indicated that

[74]

Despite receiving monthly account statements with check images, RPCC failed to report any unauthorized transaction to TD Bank until after DiCrecchio's confession in August 2018.[75] Further, no one from RPCC ever reported that DiCrecchio was not authorized to be the sole signer on the -5031 Account.[76]

## III.   RELEVANT PROCEDURAL HISTORY

On April 11, 2019, RPCC sued TD Bank for common law negligence (Count I), negligence under the Pennsylvania UCC, 13 Pa. C.S §§ 3405 and 3406 (Count II), conversion of instruments under the Pennsylvania UCC, 13 Pa. C.S. § 3420 (Count III) and aiding and abetting conversion (Count IV). RPCC's claims are based on two theories, (1) that TD Bank was liable based on RPCC's rogue employee's July 30, 2009 opening of the -5031 Account, which account they claim should have been opened as a two-signer account, and (2) that TD Bank was liable for DiCrecchio's alleged unauthorized use of the -5031 Account.[77]

TD Bank moved to dismiss RPCC's Complaint.[78] On March 24, 2020, the Court granted the Motion to Dismiss, in part, dismissing RPCC's claims for common law negligence to the extent the claims attempt to impose a duty of care premised on the Bank Secrecy Act (Count I) and dismissing RPCC's claim for aiding and abetting conversion (Count IV).[79]

The Court allowed RPCC's claim for common law negligence (Count I) to proceed, reasoning that it was not yet clear based purely on the Complaint that the common law negligence claim was displaced by the PA UCC; allowed RPCC's claim for statutory negligence (Count II) to proceed, reasoning that it was premature to determine if RPCC knew or should have known of its injury and its cause; and allowed RPCC's claim for statutory conversion (Count III) to proceed, reasoning that it was premature to determine if RPCC was the issuer of checks on the TD Bank account(s).[80]

Based on the undisputed record, the Court should now grant summary judgment, dismissing RPCC's remaining claims for common law negligence (Count I), statutory negligence (Count II) and statutory conversion (Count III).

## IV.   ARGUMENT

### A.   Rule 56 Compels Dismissal of RPCC's Remaining Claims.

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56.  "A factual dispute is 'material' if it might affect the outcome of the suit under the applicable law. An issue is 'genuine' only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party." *Washington v. City of Philadelphia*, Civ. No. 17-4706, 2021 WL 949461, at *2 (E.D. Pa. Mar. 12, 2021) (Goldberg, J.) (internal citations omitted); *Mercantanti v. Wci Operations Llc*, 2015 U.S. Dist. LEXIS 42475, *5-6 (E.D. Pa. Mar. 31, 2015); *Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705 (E.D. Pa. 2010).

"Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not 'support its motion with affidavits or other similar materials negating the opponent's claim.'" *Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp.

2d 562, 573 (E.D. Pa. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." *Celotex*, 477 U.S. at 325. "***When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts***." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (U.S. 1986). "There must . . . be sufficient evidence for a jury to return a verdict in favor of the nonmoving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231 (3d Cir. 1999).

Here, based on the undisputed material facts, TD Bank is entitled to judgment as a matter of law and RPCC's remaining claims for statutory negligence, common law negligence, and conversion should be dismissed.

### B. Judgment Should Be Entered in Favor of TD Bank on RPCC's Statutory Negligence Claim (Count II) Because RPCC Failed To Give Timely Notice of Any Unauthorized Transactions.

RPCC's PA UCC negligence claim is barred in its entirety by the Repeater Rule. Alternatively, the one-year limitation under 13 Pa. Cons. Stat. § 4406 bars the recovery of any damages that occurred before August 16, 2017, *i.e.,* more than one year before RPCC first reported an unauthorized transaction to TD Bank.

### 1. The Repeater Rule Bars RPCC's Statutory Negligence Claim In Its Entirety.

Under the PA UCC, a bank customer has a duty to discover and report unauthorized signatures or alterations to their checks within 30 days. *See* 13 Pa. Cons. Stat. § 4406. Further, the PA UCC "Repeater Rule" precludes damages for unauthorized payments, conducted

repeatedly by the same person, 30 days *after the first account statement was made available*

that listed the first unauthorized transaction committed by the wrongdoer. Opinion, TD Bank,

N.A.'s Motion to Dismiss, Dkt. No. 20, Mar. 24, 2020 ("*Op.*"), at 20; 13 Pa. Cons. Stat. §

4406(d); *see also Gennone v. Peoples Nat'l Bank & Trust Co.*, No. 4574, 1971 Pa. Dist. & Cnty.

Dec. LEXIS 551, at *2 (C.P. Montgomery Jan. 21, 1971).

Specifically, under 13 Pa. Cons. Stat. § 4406(d), a bank customer is precluded from

asserting claims against the bank for unauthorized payments when:

> (1) the bank sends or makes available to the customer statements of
> account, *see* 13 Pa. Cons. Stat. § 4406(a), (c), (d);
>
> (2) the customer failed in his duty to promptly notify the bank about
> the alleged forgery, *see* 13 Pa. Cons. Stat. § 4406(c), (d);
>
> (3) the forgery was committed by the same wrongdoer, *see* 13 Pa.
> Cons. Stat. § 4406(d)(2); and
>
> (4) the unauthorized payments for which the customer claims
> damages were made in the time period between,
>
>> (i) 30 days after the bank account statement revealing the
>> forgery by the same wrongdoer was issued, *see id.*; and
>>
>> (ii) when the bank first received notice from the customer of
>> the alleged forgery, *see id.*

*See* 13 Pa. Cons. Stat. § 4406(d).

Pennsylvania courts, as well as other jurisdictions interpreting nearly identical language

to 13 Pa. Cons. Stat. § 4406(d), have routinely held that a bank customer has a duty to discover

and report unauthorized signatures or alterations to their checks within 30 days of the *date the*

*fraud first appears* on the customer's bank statement. *See* 13 Pa. Cons. Stat. § 4406; *see, e.g.*

*Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 713 (E.D. Pa. 2010)

("Section 4406(d) warns that if the customer fails to fulfill its duty under subsection (c), it is

precluded from asserting the unauthorized signature of the customer or alteration of the *same*

*wrongdoer* on any items the bank subsequently paid in good faith"); *Grassi Design Grp., Inc. v. Bank of Am., N.A.,* 908 N.E.2d 393, 395 (Mass. App. Ct. 2009) ("If the customer fails to report the first forged check within thirty days, the customer is precluded from recovery for any additional checks forged by the ***same wrongdoer*** and paid in good faith before the bank has received notice from the customer"); *Travelers Indem. Co. v. Good*, 737 A.2d 690, 694 (N.J. Super. App. Div. 1999) ("If the customer fails to report an unauthorized signature in breach of its duty and the bank subsequently pays other items in which the ***same wrongdoer*** is involved after the customer has had a reasonable time ***(not exceeding thirty days) to report the first item***, the customer is precluded from asserting the alteration or unauthorized signature on subsequent items").

This interpretation makes sense within the context of the underlying policy goals of the Pennsylvania UCC – "In adopting the [PA UCC] and its amendments, ***the Pennsylvania legislature has concluded that customers are better able than banks to minimize the risk of embezzlement***" and other fraudulent activities. *Deutsch v. Wells Fargo Bank, N.A.*, No. CIV.A. 13-3914, 2015 WL 3833226, at *6 (E.D. Pa. June 22, 2015). "This customer notice requirement is triggered when the bank 'makes available' the relevant information regarding the disputed negotiable instrument, including: the item number, date of payment and the amount of the transaction." *Id.*, at *6.

Here, under the Repeater Rule in the PA UCC, RPCC is precluded from asserting claims for all unauthorized payments made 30 days after the first account statement was made available that listed the first unauthorized transaction by DiCrecchio. It is undisputed that the Market received account statements on a monthly basis, which showed all activity on the -5031 Account for the month, from September 2009 to August 2018, and that they were sent to RPCC's address

14

once the Market moved.[81] PFFTC's and RPCC's agent, Patricia Pumphrey, further confirmed

that the Market received and she reviewed TD Bank account statements for the -5031 Account

every month since the -5031 Account was opened in July 2009.[82] DiCrecchio's unauthorized

transactions appeared on account statements on a monthly basis, including, for example, the

September 2009 account statement, showing check images with only DiCrecchio's signature, or

the May 2011 account statement, showing a check made to Jonathan Advisors for $20,000.[83]

RPCC admits that no RPCC Board members or employees ever reported any unauthorized

transactions to TD Bank until after DiCrecchio confessed in 2018, years after TD Bank made

statements available to RPCC showing the first unauthorized payments made by DiCrecchio.[84]

Thus, because RPCC failed to timely alert TD Bank to DiCrecchio's first unauthorized

transaction on the -5031 Account, RPCC is precluded from recovery for *any* unauthorized

transactions in this case.

### 2. Alternatively, the UCC's One-Year Limitation Bars RPCC's Claims That Occurred Before August 16, 2017.

RPCC's negligence claim under 13 Pa. C.S. §§ 3405 and 3406 also fails, irrespective of

any party's duty of care, because RPCC failed to timely report to TD Bank any fraud on the -

5031 Account.

Under 13 Pa. C.S.A. § 3406,

> [a] person whose *failure to exercise ordinary care* substantially
> contributes to an *alteration of an instrument* or to the making of a
> forged signature on an instrument is precluded from asserting the
> alteration or the forgery against a person who, in good faith, pays
> the instrument or takes it for value or for collection.

Under 13 Pa. C.S.A. § 4406, this Court does not need to consider the "ordinary care" of

either RPCC or TD Bank because RPCC failed to notify TD Bank of the alleged fraud within

one year of an account statement being made available. "*Without regard to care or lack of care*

of either the customer or the bank, a ***customer who does not within one year*** after the statement

or items are made available to the customer (subsection (a)) discover and report the customer's

unauthorized signature on or any alteration on the item ***is precluded from asserting against the***

***bank the unauthorized signature or alteration***." *See* 13 Pa. Cons. Stat. § 4406(f). *See also Envtl.*

*Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 717-718 (E.D. Pa. 2010)

(precluding bank customer, pursuant to § 4406, from asserting claims for checks returned beyond

one year from the time bank made account statement available, regardless of whether an

alteration was reasonably discoverable); *Estate of Clark ex rel. Clark v. Toronto Dominion Bank*,

Civ. No. 12-cv-6259, 2013 WL 1159014, at *6-9 (E.D. Pa. Mar. 21, 2013) (same).

Further, as stated in Section C.5 below, the Account Agreement bars RPCC from

bringing claims arising from DiCrecchio's fraudulent withdrawals and checks, irrespective of TD

Bank's fault.[85] The Account Agreement clearly imposes a duty on RPCC to check its account

statements and to report any irregularities to TD Bank within 30 days after the account statement

that lists the fraudulent withdrawals or checks is made available to RPCC.[86]  RPCC's failure to

abide by these terms completely bars RPCC's claims against TD Bank.[87]

> **3.     Fraudulent Concealment is Not a Defense to the PA UCC Repeater Rule or The One-Year Limitation Because Each is a Limitation on RPCC's Ability to Recover Damages and Not a Statute of Limitation.**

Under black letter Pennsylvania law, when fraudulent concealment is applied to toll a

statute of limitations, the party asserting the fraud has the burden of proving by clear, precise and

convincing evidence that the other party "committed some ***affirmative independent act of***

***concealment*** upon ***which the plaintiffs justifiably relied***." *Kingston Coal Co. v. Felton Min. Co.,*

*Inc.*, 456 Pa.Super. 270, 284, 690 A.2d 284, 291 (1997). Mere mistake, misunderstanding or lack

of knowledge is insufficient. *Id.*

16

Similarly, "silence in the absence of a duty to speak" is insufficient. *Bucci*, 591 F. Supp. 2d at 787 (quoting *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 443 (Pa. Super. Ct. 2003)) (holding that the plaintiff's claims for unauthorized transactions could not be tolled by fraudulent concealment because they were based on the bank's alleged failure to disclose and because the plaintiff had not alleged any affirmative conduct to rise to the level of fraudulent concealment); *Estate of Clark v. Toronto Dominion Bank*, No. 12-CV-6259, 2013 WL 1159014, at *1 (E.D. Pa. March 21, 2013) (holding that alleging bank employees knew of fraud is insufficient to prove fraudulent concealment absent an allegation of affirmative conduct of actual fraudulent concealment).

Here, the undisputed record shows that TD Bank did not fraudulently conceal the fact that the -5031 Account was a single-signer account and that DiCrecchio was the sole signer on the account. To the contrary, TD Bank provided monthly account statements with check images since the -5031 Account was opened.[2]

Regardless, while fraudulent concealment may toll the three-year statute of limitations period under 13 Pa.C.S.A. § 3118(g), it does ***not*** affect the limitation of liability provisions under

---

[2] *See generally* Exs. 31-38; Deposition of Patricia Pumphrey, dated December 7, 2021 (the "***Pumphrey Deposition***") 40:18-41:24, 43:6-44:9. If the Market reviewed any of the -5031 Account statements, they would have seen that DiCrecchio was the only signer on dozens of checks each month. Further, there was no concealment by TD Bank regarding the number of signatures on checks because the checks were not ordered through TD Bank – PFFTC and RPCC ordered the checks through another vendor. *See* Pumphrey Dep. 52:12-53:21. The Market failed to review the Account Agreement and any of the -5031 Account opening paperwork, despite knowing that the -5031 Account existed and using it for legitimate business purposes for years. *See* Deposition of John Vena, dated November 17, 2020 (the "***Vena Deposition***") 31:6-32:5; Deposition of John DiFeliciantonio, dated December 14, 2021 (the "***DiFeliciantonio Deposition***") 50:4-11; Deposition of Louis Penza, dated November 20, 2020 (the "***Penza Deposition***") 100:21-101:7; Deposition of George Manos, dated November 19, 2020 (the "***Manos Deposition***") 87:12-88:13, 103:4-19, 107:1-6. Because there is no evidence of fraudulent concealment committed by TD Bank, RPCC is not entitled to tolling the statute of limitations.

13 Pa. Cons. Stat. § 4406. Neither the Supreme Court of Pennsylvania nor the Third Circuit –

predicting Pennsylvania law – has ever applied fraudulent concealment to Section 4406(f).

Rather, as this court recognized in *Bucci* "Section 4406(f) is not a statute of limitations *per se,*

but rather 'a precedent to an action which, ***unlike a statute of limitations, cannot be tolled***."

*Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 785 fn9 (E.D. Pa. 2008) (quoting *Euro*

*Motors, Inc. v. Southwest Financial Bank and Trust Co.,* 297 Ill. App. 3d 246, 231 Ill. Dec. 415,

696 N.E.2d 711, 716 (Ill. App. 1998); *see also Menichini v. Grant*, 995 F.2d 1224, 1231 (3d Cir.

1993) (holding that section 4406 "mandates 'mechanical' application of the statute of limitations

notwithstanding the customer's failure to discover a forged indorsement within the relevant

limitations period.").

  **C. Judgment Should Be Entered in Favor of TD Bank on RPCC's Claim for Common Law Negligence (Count I).**

  RPCC's common law negligence claim (Count I) is premised on two theories – (1) that

TD Bank allegedly was negligent by permitting DiCrecchio to open the -5031 Account, and (2)

that TD Bank was allegedly negligent by allowing DiCrecchio to use the -5031 Account to

conduct allegedly unauthorized transactions. Based on the undisputed record, both theories fail

as a matter of law for five independent reasons.

  **1. The PA UCC Displaces RPCC's Common Law Negligence Claim Based On Allegedly Unauthorized Transactions.**

  Under well-established Pennsylvania law, the PA UCC displaces common law claims

when the parties' duties with respect to a banking transaction are covered by the UCC. *See Envtl.*

*Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 712-713 (E.D. Pa. 2010)

(holding the UCC "provides a comprehensive remedy for the parties to the transaction – a

delicate balance that would be disrupted by the allowance of common law negligence claims[,]"

and thus dismissing common law negligence claims against a bank for crediting against the

plaintiff's account items that were not properly payable). Courts in Pennsylvania and the Third Circuit consistently recognize that the PA UCC displaces common law negligence claims. *See, e.g., Gress v. PNC Bank, Nat'l Ass'n*, 100 F. Supp. 2d 289, 292 (E.D. Pa. 2000) (concluding PA UCC displaces common law negligence claim); *Metro Waste, Inc. v. Wilson Check Cashing, Inc.*, March 2003 Term, No. 2117, 2003 Phila Ct. Com. Pl. LEXIS 56, at *3-6 (Pa. Commw. Ct. Sept. 23, 2003) (same); *Mack v. CTC Ill. Trust Co.*, No. 04-CV-0083, 2004 U.S. Dist. LEXIS 13997 at *17-18 (E.D. Pa. July 19, 2004); *Travelers Indemnity Co. v. Citibank Delaware*, No. 04-13868, 2007 Pa. Dist. & Cnty. Dec. LEXIS 314, at *13 (Pa. Commw. Ct. Aug. 29, 2007) (same); *United States Steel Corp. v. Express Enterprises of Pennsylvania, Inc.*, No. 0140, 2006 Phila. Ct. Com. Pl. LEXIS 149 at *3 (Pa. Commw. Ct. March 22, 2006) (explaining "where the UCC provides a comprehensive remedy for the parties to a transaction, a common law action will be barred" and concluding that § 3404 displaces common law negligence claim).[3]

The PA UCC governs the banking transactions at issue here. Specifically, 13 Pa.C.S.A. §§ 3405 and 3406 address a party's liability for negligence associated with the alteration of checks, forged checks, and fraudulent indorsements of checks, and 13 Pa.C.S.A. § 4406 addresses a bank customer's duty to report unauthorized signatures on or alterations of negotiable instruments. *See, e.g., H.G. Litigation Group, LLC v. TD Bank, N.A.*, Civ. No. 5:22-

---

[3] Indeed, the PA UCC provides the framework governing banking transactions and disputes arising from them, and "is to be liberally construed and applied to promote its underlying purposes and policies which include simplifying and clarifying the law governing commercial transactions, fostering an expansion of commercial practices and standardizing the law of various jurisdictions." *Travelers Indemnity Co. v. Citibank Delaware*, No. 04-13868, 2007 Pa. Dist. & Cnty. Dec. LEXIS 314, at * 13 (Pa. Commw. Ct. Aug. 29, 2007) (citing *United States Steel Corp. v. Express Enterprises of Pennsylvania, Inc*., No. 0140, 2006 Phila. Ct. Com. Pl. LEXIS 149 (Pa. Commw. Ct. March 22, 2006)). "Displacement of common laws claims by a comprehensive statutory scheme promotes interstate commerce by allowing businesses to rely on one set of laws." *Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A*., 741 F. Supp. 2d at 715.

cv-00305-JMG, 2022 WL 1103791, at *3 (E.D. Pa. Apr. 13, 2022) (Gallagher, J.) (granting motion to dismiss common law negligence claim, as displaced by 13 Pa. C.S. § 3404, noting that the UCC "expressly provides a remedy for plaintiffs who are harmed by a bank's negligence in transactions involving fraudulent checks."); *Cornelius v. PNC Bank, N.A.*, No. 2:21-cv-106, 2022 WL 426609, at *3 (W.D. Pa. Feb. 11, 2022) (dismissing common-law claims for indemnity and contribution, as displaced by UCC Articles 3 and 4, reasoning that the common law claims "seek to apportion risks among those liable for loss, add nothing that isn't already expressly provided for in UCC Articles 3 and 4."). Accordingly, RPCC's common law negligence claim based on allegedly unauthorized transactions is displaced by the PA UCC and judgment should be entered in favor of TD Bank.

> **2.      RPCC's Common Law Negligence Claims Are Barred By the Two-Year Statute of Limitations.**

Under Pennsylvania law, claims for negligence are governed by a ***two-year statute of limitations period***. *See* 42 Pa.C.S.A. § 5524 (statute of limitations for negligence claims is two years); *Nova Realty v. Am. Risk Reduction Servs.*, 2014 WL 10575442, at *5 (Pa. Super. Ct. Sept. 30, 2014) ("[T]he statute of limitations for a negligence cause of action is triggered upon the occurrence of the alleged breach of duty."); *Young v. City of Philadelphia*, 744 F. Supp. 673, 674 (E.D. Pa. 1990) ("The two-year limitation generally begins to run from the time a plaintiff suffers an injury.").

Here, both of RPCC's negligence theories are barred by the two-year statute of limitations.

> *a.      The statute of limitations on RPCC's account opening claim expired on July 30, 2011.*

Under its first theory, RPCC alleges that TD Bank was liable for negligence based on DiCrecchio's July 30, 2009 opening of the -5031 Account.[88] Thus, RPCC was required to bring

any claims based on the -5031 Account opening by July 30, 2011. But RPCC did not file its Complaint until April 11, 2019 – almost eight years after the alleged conduct giving rise to these claims. This claim is thus time-barred.

Further, the discovery rule does not apply to RPCC's claim for negligent account opening. Pennsylvania's discovery rule tolls the statute of limitations until a plaintiff "[k]nows or ***reasonably should know that [s]he has been injured*** and that [her] injury has been caused by another party's conduct." *Ormsby v. Luzerne County Dept. of Public Welfare Office of Human Services*, No. 05–2453, 2005 WL 2184759, at *2 (3d Cir. Sept. 12, 2005); Mot. To Dismiss. 15-16 ("[T]he discovery rule focuses not on the plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006) (internal quotation marks omitted); *see also Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013)). Here, it is undisputed that the Market had actual knowledge that the -5031 Account existed and used the -5031 Account for legitimate business purposes for almost a decade.[89] To the extent RPCC claims it believed the -5031 Account was a two-signer account, and was injured because the -5031 Account was actually a one-signer account, RPCC reasonably should have known of this injury dating back to the very first monthly account statement TD Bank provided for this account on September 2009 (the earliest statement either party has a record of), or any of the 95 months after it, that showed that many checks were signed by only one signer.[90] Further, RPCC was on notice that TD Bank did not offer two-signer accounts because DiCrecchio was the sole signer on PFFTC's prior account for nine years prior to the -5031 Account's opening.[91]

Additionally, RPCC failed to do anything to confirm that the -5031 Account was a two-signer account. RPCC's Board never asked to see the -5031 Account opening paperwork, which

showed DiCrecchio was the sole signer.[92] Also, other than Pumphrey, no one from RPCC

apparently ever reviewed any of the monthly -5031 Account statements, which included check

images that showed DiCrecchio's signature as the sole signature on hundreds of checks.[93]

RPCC's Board also never asked DiCrecchio to see the Account Agreement that governed the

relationship between TD Bank and the Market, which explicitly stated that TD Bank did not

offer two-signer accounts.[94] Had they looked at what was in plain sight – the account opening

documents, the monthly account statements with check images and/or the account agreement –

RPCC would have known that the -5031 Account was a sole signer account. In short, RPCC

reasonably should have known that the -5031 Account was a single signer account in September

2009, if not earlier, and thus, the discovery rule does not toll the statute of limitations for

RPCC's negligent account opening claim.

> b.   *The statute of limitations on RPCC's account use claim bars*
> *claims before April 11, 2017.*

Under its second negligence theory, RPCC alleges that TD Bank was negligent in

allowing DiCrecchio to make unauthorized use of the -5031 Account. Because claims for

negligence have a two-year statute of limitations period, all claims arising from DiCrecchio's

alleged unauthorized checks must be brought within two years of their occurrence. "In a cause of

action involving conversion of negotiable instruments, the cause of action accrues and the statute

begins to run at the moment in time when the instrument is negotiated." *Bucci*, 591 F. Supp. 2d

at 786; *see also Menichini v. Grant*, 995 F.2d 1224, 1231 (3d Cir. 1993); *Estate of Hollywood v.*

*First Nat'l Bank of Palmerton*, 859 A.2d 472, 482–83 (Pa. Super. Ct. 2004) ("When the property

converted is a negotiable instrument, the damage is done, and the tort is complete when the

instrument is negotiated, regardless of the plaintiff's ignorance of the conversion.").

Here, RPCC filed its Complaint on April 11, 2019. Thus, all claims arising from DiCrecchio's unauthorized checks before April 11, 2017 are time-barred.

The discovery rule also does not apply to RPCC's claim for negligent account use. RPCC should have known, through the exercise of reasonable diligence, that DiCrecchio's fraud dated as far back as 2006, when DiCrecchio began writing checks to Jonathan Advisors to pay monthly rental costs for the Stone Harbor house.[95] Had PFFTC and RPCC reviewed its monthly account statements, obtained annual audits, or fulfilled its responsibility to have a clear and current understanding of RPCC's financials, it would have discovered that DiCrecchio's fraud started in 2006 and that DiCrecchio was the sole signer on dozens of checks each month for over a decade.[96] Thus, the discovery rule does not apply to toll the two-year statute of limitation on RPCC's negligence account use claim.

### 3. RPCC's Negligence Claim Fails Because DiCrecchio Had Authority To Open and To Transact on the -5031 Account, and RPCC Ratified This Authority.

"Under Pennsylvania law, an agent can bind his principal if the agent has actual or apparent authority." *Residential Reroofers Loc. 30-B Health & Welfare Fund of Philadelphia & Vicinity v. A & B Metal & Roofing, Inc.*, 976 F. Supp. 341, 345 (E.D. Pa. 1997) (internal quotations omitted). "Actual authority is the authority expressly granted to an agent by his principal." *Id.* (internal quotations omitted). "Apparent authority exists where the principal, *by words or conduct*, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise." *Id.* "[T]he intent to be bound to a third party flows from the principal's conduct and not from that of the agent." *Id.*; *see also AT & T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1439–40 (3d Cir. 1994) (noting that doctrine of apparent authority is applicable to both agents and non-agents who are reasonably believed by third parties to have agency relationship with principal).

"Consent sufficient to establish an agency relationship exists not only where there is prior authorization, but also where a principal ratifies acts done on her behalf after the fact. Furthermore, the concept of ***ratification in agency law binds a principal to an unauthorized agent's act if the principal knows of the acts but fails to take affirmative steps to disavow them***." *Id*. at 346; s*ee also Family Partners Worldwide, Inc. v. SunTrust Bank, Atlanta*, 242 Ga.App. 618-620, 530 S.E.2d 742 (Ga. App. 2000) (granting SunTrust's motion for summary judgment concluding that CEO was plaintiff's agent and had inherent authority to open account and withdraw funds, regardless of whether SunTrust failed to follow its account opening procedures).

Further, in Pennsylvania, it is black letter law that "[k]nowledge of officers and agents 'is imputed to the corporation itself.'" *Smith v. Bic Corp.,* No. CIV.A. 87-0795, 1988 WL 71362, at *3 (E.D. Pa. July 1, 1988)) (internal citations omitted); *W.C.A.B. v. Evening Bulletin*, 445 A.2d 1190, 1192 (Pa. 1982) ("It is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, . . . and therefore, knowledge of the agent is knowledge of the principal."). This is also the legal test in other jurisdictions that frequently address corporate law, like New York and Delaware. *In re Lyondell Chem. Co.*, No. 16CV518 (DLC), 2016 WL 5818591, at *3 (S.D. N.Y. Oct. 5, 2016) ("Bedrock principles of agency law provide that the knowledge of an agent, acquired while acting within the scope of employment, is imputed to his principal." Further, "***knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself***.'") (quoting *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 302–03 (Del. 2015)).

Here, at a minimum, DiCrecchio had apparent authority to open the -5031 Account and bind PFFTC to the Account Agreement on PFFTC's behalf, and PFFTC and RPCC ratified the opening. It is undisputed that DiCrecchio had been, and PFFTC allowed DiCrecchio to be, the sole signer on PFFTC's -3085 Account since 2000.[97] Thus, by the time the -5031 Account was opened, DiCrecchio had already been the sole signer on PFFTC's -3085 Account for nine years without anyone from PFFTC complaining to TD Bank that DiCrecchio was not authorized to so act. Further, DiCrecchio signed (1) the Signature Card for the -5031 Account, affirming that he had "authority to act with respect to this account(s)" and (2) the For Profit Corporate Banking Resolution for the -5031 Account, affirming that he was PFFTC's agent and its "Executive Director".[98] RPCC's Bylaws also gave DiCrecchio express authority to enter contractual relationships on RPCC's behalf and sign checks.[99]

PFFTC's and RPCC's subsequent actions ratified DiCrecchio's authority to open the -5031 Account on PFFTC's behalf. PFFTC and RPCC admit that both Boards knew about the -5031 Account and that the -5031 Account was used for legitimate business purposes.[100] PFFTC and RPCC received monthly account statements that showed dozens of checks each month that were signed by only DiCrecchio.[101]

RPCC's first act repudiating DiCrecchio's authority to open the -5031 Account did not come until August 2018, when RPCC informed TD Bank of DiCrecchio's embezzlement scheme.[102] But even when RPCC informed TD Bank of DiCrecchio's scheme, it did not repudiate DiCrecchio's authority to have opened the -5031 Account as a single-signer account, or to have transacted on the -5031 Account, but rather stated that DiCrecchio *no longer* had authority to transact on the -5031 Account.[103] These communications further ratified

DiCrecchio's authority to open the -5031 Account and confirmed that DiCrecchio was RPCC's agent and authorized to transact on the -5031 Account.

Additionally, DiCrecchio had actual authority to transact on the -5031 Account, as stated in RPCC's Bylaws.[104]

In short, DiCrecchio had apparent and actual authority to open the -5031 Account, and actual authority to transact on the -5031 Account. PFFTC failed to repudiate, in any way, DiCrecchio's authority to open or transact on the -5031 Account, and RPCC's actions after DiCrecchio opened the -5031 Account ratified DiCrecchio's authority. Thus, RPCC's claim for negligent account opening and account use fails and judgment should be entered for TD Bank.

### 4. RPCC's Negligence Claim Based on Account Use Further Fails Because TD Bank Had No Duty to Monitor RPCC's Account for Fraud.

"It would be patently unreasonable to expect bank to monitor all of its customers in order to protect them from embezzlement." *Lebanon Cty. Earned Income Tax Bureau v. Bank of Lebanon Cty.*, No. 2007-01270, 2011 WL 12847599, at *13 (Pa. Com. Pl. Jan. 10, 2011). The realities and exigencies of the bank-depositor relationship require that once a bank account is opened, the risk of embezzlement is upon the depositor and not the bank. *Id.*; *see also Levy Baldante Finney & Rubenstein, P.C. v. Wells Fargo Bank, N.A.*, No. 3241 EDA 2016, 2018 WL 847756, at *9 (Pa. Super. Ct. Feb. 14, 2018) (affirming summary judgment and holding that appellee law firm – not appellant bank – had a duty to monitor its account for fraud because law firm was in a far better position than bank to detect its employee's fraudulent activities). *See also Globe Motor Car Co. v. First Fidelity Bank, N.A.*, 273 N.J.Super. 388, 641 A.2d 1136, 1139 (N.J. 1993) ("Absent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor and is not liable to its depositor in negligence for failing to uncover a major theft.").

In the absence of a cognizable duty, a negligence claim fails. *Hoffman v. Paper Converting Machine Co.*, 694 F. Supp. 2d 359, 368 (E.D. Pa. 2010). Here, because banks do not owe duties to customers to monitor their accounts for fraud or for an employee exceeding his authority, RPCC's negligence claim fails.

### 5.   RPCC's Account Agreement with TD Bank Bars RPCC's Account Use Claim.

RPCC's claims arising from DiCrecchio's fraudulent check writing are barred by the Account Agreement's clear and unambiguous terms. Pennsylvania's gist of the action doctrine precludes a plaintiff from asserting a tort claim when the claim is actually based in contract. *The Knit With v. Knitting Fever, Inc.*, Civ. Nos. 08-4221, 08-4775, 2009 WL 3427054, at *4 (E.D. Pa. Oct. 20, 2009). The doctrine bars tort claims: "(1) arising solely from a contract between the parties ...; (2) where the duties allegedly breached were created and grounded in the contract itself ...; (3) where the liability stems from a contract ...; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *Id*. at *5. "[I]f the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Id*. The Account Agreement expressly creates a duty for PFFTC – not TD Bank – to monitor its account for any unauthorized checks or withdrawals:[105]

> ***You are responsible for promptly examining your statement each statement period and reporting any irregularities to us***.  The periodic statement will be considered correct for all purposes and we will not be liable for any payment made and charged to your Account unless you notify us in writing within certain time limits after the statement and checks are made available to you.  ***We will not be liable for any check that is altered or any signature that is forged unless you notify us within a reasonable period of time, not to exceed thirty (30) calendar days after the statement and the altered or forged item(s) are made available***.  Also, ***we will not be liable for any subsequent items paid, in good faith, containing an unauthorized signature or alteration by the same***

*wrongdoer unless you notify us within Thirty (30) calendar days after the statement and first altered or forged items were made available.*[106]

RPCC points to no provision in the Account Agreement – nor can it – that places any duty on TD Bank to monitor RPCC's accounts for unauthorized transactions, and RPCC's account use claim would contradict the clear and unambiguous contract terms placing the duty to monitor and report unauthorized transactions on RPCC. Moreover, RPCC admitted that no one from RPCC ever reported any unauthorized transaction to TD Bank until after DiCrecchio's confession in 2018.[107]

Further, RPCC is bound by the terms of the Account Agreement even if it did not receive it. *See Brandywine Professional Services, LLC v. Quigley*, Civ. No. 13-2865, 2015 WL 6598537, at *3-5 (E.D. Pa. Oct. 30, 2015) (granting TD Bank's motion for summary judgment and finding that plaintiff was bound by the "No Two-Signer Accounts" provision in the account agreement, rejecting plaintiff's argument that he never received the account agreement since the signature card incorporated the account agreement by explicit reference stating Brandywine, "agrees to [be] bound by the terms of the applicable Deposit Account Agreement(s), as may be revised or amended from time to time").

**D.  Judgment Should Be Entered in Favor of TD Bank on RPCC's Statutory Conversion Claim (Count III) Because RPCC, as the Issuer of the Checks, Cannot Bring a Conversion Claim.**

RPCC's claim for conversion fails for three reasons. ***First***, the PA UCC and Pennsylvania case law make clear that "[a]n action for conversion of an instrument ***may not be brought by the issuer*** or acceptor of the instrument." 13 Pa.C.S.A. § 3420(a) & cmt. 1 ("There is no reason why a ***drawer*** should have an action in conversion."); *see also*, *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008) (granting dismissal, in part, on bank's motion to dismiss customer's UCC conversion claim because plaintiff's company was the issuer

and drawer of the checks the bank allegedly converted); *Citizens Bank of Pennsylvania v. Chevy Chase Bank*, CIV.A. 03-CV-5208, 2004 WL 875499, at *2 (E.D. Pa. Mar. 22, 2004) (granting dismissal, on defendant bank's motion to dismiss, of plaintiff bank's UCC conversion claim because plaintiff bank was the maker of the allegedly converted check); *St. Julien v. Andrews*, CIV. A. 972236, 1998 WL 134223, at *2 (E.D. Pa. Mar. 24, 1998) (granting dismissal, in part, on bank's motion to dismiss customer's UCC conversion claim because plaintiff's company was the issuer and drawer of the checks the bank allegedly converted); *see also Travelers Indemnity Co. v. Citibank Delaware*, No. 04-13868, 2007 Pa. Dist. & Cnty. Dec. LEXIS 314, at * 9 (Pa. Commw. Ct. Aug. 29, 2007) (granting dismissal, on bank's motion for summary judgment, of customer's conversion claim because customer was the issuer of the allegedly converted checks and stating that "[t]he provisions in § 3420 barring the issuer of a check from proceeding on a conversion theory is based on the fact that an issued check is not 'property' of the issuer, but rather an obligation, representing a payment to the payee.").

RPCC admittedly used the -5031 Account for its own business,[108] and thus was the "issuer" of checks from the -5031 Account. 13 Pa.C.S.A. § 3105(c) (defining "issuer" as a "maker or drawer of an instrument."). RPCC was also the "drawer" of checks from the -5031 Account because DiCrecchio and other RPCC Board members, acting as RPCC's agents, signed checks and ordered payment on RPCC's behalf. 13 Pa.C.S.A. § 3103(a) (defining "drawer" as "[a] person who signs or is identified in a draft as a person ordering payment."); *Sebastian v. D & S Exp., Inc.*, 61 F. Supp. 2d 386, 390 (D. N.J. 1999).[109] Accordingly, RPCC may not maintain a claim for conversion for any checks written against the -5031 Account. *See Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008); *St. Julien v. Andrews*, No. CIV. A. 972236, 1998 WL 134223, at *2 (E.D. Pa. Mar. 24, 1998); *Sebastian*, 61 F. Supp. 2d at 391

(applying Pennsylvania law and stating that, "the plaintiffs as issuers, makers or drawers, of the checks cannot maintain the conversion action because such is barred by 13 Pa.C.S.A. § 3420(a).").

**Second**, to the extent RPCC attempts to pursue a conversion claim based on the deposit of RPCC funds into the -5031 Account, such claim also fails as a matter of law. "The law applicable to conversion of personal property applies to instruments." 13 Pa. Cons. Stat. 3420(a). Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Option One Mortg. Corp. v. Fitzgerald*, 687 F. Supp. 2d 520, 528 (M.D. Pa. 2009) (citing *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721, 726 (Pa. 1964)). Here, it is undisputed that RPCC's own agents made the deposits into the -5031 Account, and thus deposits were done with RPCC's consent, and that the funds in the -5031 Account were used for RPCC's business, and thus RPCC was not deprived of the funds from the deposits.[110] Further, a conversion claim fails where the party claiming conversion, like RPCC, received the proceeds of the deposited checks. *Contra. Option One Mortg. Corp.*, 687 F. Supp. 2d at 528 (granting summary judgment on conversion claim for plaintiff-mortgagee, where bank accepted for deposit check payable to mortgagee and mortgagors but only endorsed by mortgagors, for full amount payable on check where defendants did not allege that "any of the proceeds of the check were ever paid to [plaintiff-mortgagee] by the [mortgagors or] the Defendants.").

**Third**, even if RPCC could bring a claim against TD Bank for conversion under the UCC, which it cannot, the claim would be barred for any fraudulent checks that occurred prior to the PA UCC's three-year statute of limitations. Section 3-118(g) of the Code, 13 Pa.C.S.A.

§3118(g), establishes a three-year statute of limitations that applies to claims of conversion involving negotiable instruments. *Gress v. PNC Bank*, 100 F. Supp. 2d 289 (E.D. Pa. 2000). When a bank that pays (or converts) funds on a forged endorsement is not accused of fraud in the transaction, the limitations period applies mechanically and begins to run on the date when the bank exercised dominion over the instrument. *Menichini v. Grant*, 995 F.2d 1224, 1993 U.S. App. LEXIS 13228 (3d Cir. 1993).

For all of the same reasons argued in sections B.3 and C.2 above, neither the discovery rule nor fraudulent concealment can be invoked by RPCC to toll the three-year statute of limitations. It is undisputed that RPCC knew the nature of the checks and that RPCC knew that the TD Bank account was being used for legitimate business as many representatives signed the checks.  Because RPCC has actual knowledge of the checks, RPCC's conversion claim as to any fraudulent checks or withdrawals that occurred prior to April 11, 2016 is barred.

## V.    CONCLUSION

TD Bank is entitled to summary judgment on RPCC's claims for UCC negligence, common law negligence, and UCC conversion for three reasons:

***First***, RPCC's UCC negligence claim under 13 Pa. C.S. §3405 and §3406 should be dismissed because RPCC failed to timely report any unauthorized transactions to TD Bank;

***Second***, RPCC's common law negligence claim fails and should be dismissed because (i) the PA UCC displaces the common law negligence claim based on allegedly unauthorized transactions, (ii) the claim is barred by the two-year statute of limitations, (iii) DiCrecchio had authority to open and transact on the -5031 Account, and RPCC ratified this authority, (iv) TD Bank had no duty to monitor RPCC's account for fraud and (v) the Account Agreement bars the account use claim; and

31

***Third***, RPCC's UCC conversion claim fails and should be dismissed because RPCC, as the issuer of the checks, cannot maintain a conversion claim, and RPCC was never deprived access to the funds its own agent deposited into the account.

Respectfully submitted,

Dated: April 29, 2022

DUANE MORRIS LLP

/s/ *Breeana J. Somers*

Ryan E. Borneman (203540)
Lynne E. Evans (313479)
Breeana J. Somers (325952)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
REBorneman@duanemorris.com
LEEvans@duanemorris.com
BJSomers@duanemorris.com
Tel: (215) 979-1000
Fax: (215) 979-1020

---

[1] *See* Statement of Undisputed Material Facts ("***SUMF***") at ¶ 2.
[2] *Id*. ("Number of Signatures required: 1").
[3] *Id*. Neither Commerce Bank nor TD Bank ever offered two-signer accounts. *See* SUMF at ¶ 3.
[4] *See* SUMF at ¶ 5.
[5] *Id*.
[6] *Id*. ("Number of Signatures Required: 1").
[7] *See* SUMF at ¶ 7.
[8] *See* SUMF at ¶ 8.
[9] *See* SUMF at ¶ 9.
[10] *See* SUMF at ¶ 10.
[11] *See* SUMF at ¶ 11.
[12] *Id*. ("Number of Signatures: 1").
[13] *See* SUMF at ¶ 13.
[14] *See* SUMF at ¶ 14.
[15] *See* SUMF at ¶ 15. ("The Authorized individual(s) signing agree(s)…to the terms set forth in the Deposit Account Rules and Disclosure, as amended by Bank from time to time.").
[16] *See* SUMF at ¶ 16.
[17] *See* SUMF at ¶ 17.
[18] *See* SUMF at ¶ 18.
[19] *See* SUMF at ¶ 19.

[20] *See* SUMF at ¶ 20.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *See* SUMF at ¶ 21.
[27] *See* SUMF at ¶ 22.
[28] *See* SUMF at ¶ 23.
[29] *See* SUMF at ¶ 24.
[30] *See* SUMF at ¶ 25.
[31] *See* SUMF at ¶ 26.
[32] *See* SUMF at ¶ 27.
[33] *See* SUMF at ¶ 28.
[34] *See* SUMF at ¶ 29.
[35] *See* SUMF at ¶ 30.
[36] *See* SUMF at ¶ 31.
[37] *Id.*
[38] *See* SUMF at ¶ 32.
[39] *See* SUMF at ¶ 33.
[40] *Id.*
[41] *See* SUMF at ¶ 34.
[42] *See* SUMF at ¶ 35.
[43] *See* SUMF at ¶ 36.
[44] *See* SUMF at ¶ 37.
[45] *See* SUMF at ¶ 38.
[46] *See* SUMF at ¶ 39.
[47] *See* SUMF at ¶ 40.
[48] *See* SUMF at ¶ 41.
[49] *See* SUMF at ¶ 42.
[50] *See* SUMF at ¶ 43.
[51] *See* SUMF at ¶ 44.
[52] *See* SUMF at ¶ 45.
[53] *See* SUMF at ¶ 46.
[54] *See* SUMF at ¶ 47.
[55] *See* SUMF at ¶ 48.
[56] *See* SUMF at ¶ 49.
[57] *See* SUMF at ¶ 50.
[58] *See* SUMF at ¶ 51.
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *See* SUMF at ¶ 52.
[63] *See* SUMF at ¶ 53
[64] *See* SUMF at ¶ 54.
[65] *See* SUMF at ¶ 55.
[66] *Id.*
[67] *See* SUMF at ¶ 56.
[68] *See* SUMF at ¶ 57.
[69] *See* SUMF at ¶ 58.
[70] *See* SUMF at ¶ 59.
[71] *See* SUMF at ¶ 60.
[72] *See* SUMF at ¶ 61.
[73] *See* SUMF at ¶ 62.
[74] *See* SUMF at ¶ 63.
[75] *See* SUMF at ¶ 64.

76 *See* SUMF at ¶ 65.
77 *See generally* Compl.
78 *See* Dkt. 13.
79 *See* Dkt. 20.
80 *See* Dkt. 20.
81 *See* SUMF at ¶¶ 57-59.
82 *See* SUMF at ¶ 57.
83 *See* SUMF at ¶ 58.
84 *See* SUMF at ¶ 38.
85 *See* SUMF at ¶ 20.
86 *Id*.
87 *Id*.
88 *See* Compl. ¶¶ 3-4, 21-39.
89 *See* SUMF at ¶ 23.
90 *See* SUMF at ¶ 58.
91 *See* SUMF at ¶¶ 5-6.
92 *See* Deposition of Louis Penza, dated November 20, 2020 (the "***Penza Deposition***") 27:13-28:2, 100:21-101:7; Deposition of George Manos, dated November 19, 2020 (the "***Manos Deposition***") 87:12-21; Deposition of John DiFeliciantonio, dated December 14, 2021 (the "***DiFeliciantonio Deposition***") 49:21-50:11.
93 *See* SUMF at ¶ 59.
94 *See* Deposition of John Vena, dated November 17, 2020 (the "***Vena Deposition***") 31:6-32:5; DiFeliciantonio Dep. 50:7-11; Penza Dep. 100:21-101:7; Manos Dep. 87:12-21, 103:4-7, 107:1-6.
95 *See* SUMF at ¶¶ 42-43.
96 *See* SUMF at ¶ 58.
97 *See* SUMF at ¶¶ 5-6.
98 *See* SUMF at ¶¶ 10-11.
99 *See* SUMF at ¶ 14.
100 *See* Compl. ¶¶ 41-42, 52, 58-59; Manos Dep. 26:15-20, 236:23-237:2; Penza Dep. 104:16-105:2; DiFeliciantonio Dep. 45:22-47:6.
101 *See* SUMF at ¶¶ 54, 58.
102 *See* SUMF at ¶ 30.
103 *Id*.
104 *See* SUMF at ¶ 14.
105 *See* SUMF at ¶ 20.
106 *Id*.
107 *See* Deposition of George Binck, dated September 29, 2021 (the "***Binck Deposition***") 26:2-19.
108 *See* SUMF at ¶¶ 23, 55.
109 *See* SUMF at ¶¶ 23, 55; Deposition of Caesar DiCrecchio Day 1, dated December 8, 2021 (the "***DiCrecchio Deposition Day 1***") 38:9-39:9, 111:10-112:2, 161:11-13; Binck Dep. 207:3-21.
110 *See* SUMF at ¶¶ 19, 23.